## McCOMBS et al. v. WEST et al.
### No. 11542.

Circuit Court of Appeals, Fifth Circuit.
May 17, 1946.

**602**

D. C. Hull, Erskine W. Landis, John L. Graham, and J. Compton French, all of DeLand, Fla., for appellants.

George P. Garrett, W. H. Poe, W. K. Whitfield, Jr., Hugh Akerman, Charles O. Andrews, Jr., and William H. Dial, all of Orlando, Fla., for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

The plaintiff-appellants' bill for a declaratory judgment and injunction was dismissed on a motion of defendant-appellees for a summary judgment. The main questions are whether bondholders of a city in Florida are bound by judgments in the State courts, rendered after the issue of the bonds and to which the bondholders were not parties, whereby owners of a great part of the land in the city and subject to taxation to pay the bonds was excluded from the city and released from all debts, duties or liabilities of the city; and whether this result deprives the bondholders of their property without due process of law contrary to the Fourteenth Amendment of the Federal Constitution.

█ On a motion for summary judgment made by defendants the facts alleged in the petition must be taken as true, unless by the admissions, depositions, or other evidence introduced it appears beyond genuine controversy otherwise. Observing this rule the court found it clear that the jurisdiction of the court was shown, and that the exclusion judgments were rendered regularly, and controlled the case in favor of the defendants. To present the case more fully, however, we state it briefly as set forth in the petition.

The City of Ocoee, Florida, was created by legislative Act, Chapter 10951, Sp.Acts of 1925, effective May 13, 1925, embracing in its limits about 1440 acres of land. It was empowered in this Act to issue bonds, and to levy and collect taxes to pay them. Several issues of bonds followed, their validity not being in question; and petitioners own some of an issue of Sept. 15, 1925, some of Aug. 1, 1926, and some of Jan. 1, 1928. All are general obligations of the city, and pledge the full faith and credit of the city for their payment. The lands in controversy were then in the city limits, and subject to city taxation, and the total assessed value of all property was approximately a million and a half dollars. On June 24, 1929, some of the defendants brought suit against the city in the Circuit Court of Orange County under a statute of the State passed in 1903, now Revised Florida Statutes, Sections 171.02, 171.03, to have their lands excluded from the city because there were less than 150 qualified voters in the city and their lands were (in the language of the statute) "from distance or other cause * * * virtually or commensurately excluded from the benefits of such municipal organization." Judgment of exclusion was rendered, and on the city's appeal was affirmed by the Supreme Court of Florida. City of Ocoee v. West et al., 102 Fla. 277, 130 So. 9. On Nov. 27, 1929, others of the defendants filed a similar suit against the city, won it, and it too was affirmed in the Supreme Court. City of Ocoee v. Beggs, 102 Fla. 275, 135 So. 557. On Oct. 25, 1930, Feb. 6, 1931, and June 11, 1931, other like suits were brought which were not defended by the city; but there is no allegation of bad faith or collusion. As a result, about 680 acres of land were excluded from the city, each decree following the statute in adjudging "that the said lands and premises shall be and they are hereby forever released from all debts, duties, or liabilities of said City of Ocoee". By 1941 the total property left in the city was assessed at about 129,000, and the excluded property was assessed, if taxable, at about $135,000. For judgments had been rendered on some of the bonds in the United States District Court, and the court had issued its mandamus against the city, requiring it to assess and tax all the lands within the city when the bonds were issued, to pay the judgments. Also the judgment-plaintiffs had brought in the District Court a suit against the city and some of the present defendants, and obtained a decree enjoining the landowners from resisting the city and the city from failing to tax the excluded lands. These judgments and decrees have all been transferred to the present plaintiffs who own also other bonds. The present petition

concludes with averments that to allow the owners of the excluded property to assert the judgments of exclusion will hinder and embarrass the enforcement of the taxes ordered by the District Court to be levied to pay the bonds,[1] and the plaintiffs and other bondholders will be deprived of property without due process of law, petitioners not having been parties and having had no notice and opportunity to be heard; and will deprive them of a large source of their pledged security and will operate as a fraud upon them. The prayers are for a declaratory judgment that the exclusion decrees are inoperative to relieve the property from taxation; that the taxation of all the taxable property described in them, they being within the city when the bonds were issued, is a part of the security for payment of the bonds and is pledged thereto; and that preliminary and permanent injunctions be granted accordingly.

The District Court held the decrees of exclusion are res judicata of the matters decided, binding on the city and on the petitioners, and not capable of being relitigated in this case; that the right to obtain exclusion under the Florida statute existed when the bonds were issued and bondholders took subject thereto; that petitioners and their transferrors have never had any lien upon the lands of defendants; their contracts have not been impaired by the State of Florida, nor their property taken without due process of law. The bill was accordingly dismissed.

The Exclusion Statute referred to is quoted in the margin.[2] It was passed more than twenty years before these bonds issued, and was part of the public law governing cities and towns, so that these bond purchasers were on notice of it, and took subject to it. The State has not passed any law impairing the obligation of their contracts within the meaning of Art. 1, Sect. 10, of the Constitution. The petition makes no such claim, and the appellants' brief disclaims that position. The claim made is that a decree pursuant to this statute to which bondholders are not parties does not estop them to contest the propriety of the exclusion; and if it does, their property rights are thereby taken without due process of law contrary to the Fourteenth Amendment.

The meaning of the statute and the effect of an exclusion decree is a matter of State law, as to which we must accept the conclusions of the Florida courts. Whether the federal Constitution is transgressed thereby is a question on which we are to exercise an independent judgment. The words "qualified electors", and "virtually or commensurately excluded from the benefits of such municipal organization" have been interpreted for us. In two

---

[1] The answers set up that the landowners have obtained in the State court an injunction against the city forbidding the levy of city taxes on their lands.

[2] Chapter 5197, Laws of Florida of 1903, F.S.A. §§ 171.02, 171.03.—"When any incorporated town (or city) containing less than one hundred and fifty qualified electors shall, owing to extent of territory, have embraced within the limits any lands which may from distance or other cause be virtually or commensurately excluded from the benefits of such municipal organization, it [shall be] lawful for any owners of such lands or three-fourths of them desiring to have the same excluded from such corporation limits and jurisdiction, to apply by petition to the circuit court in and for the county in which said incorporated town is situated, setting forth in said petition the limits of such incorporated town as then existing and the grounds of his or their objection to be included within the limits of such corporation; whereupon the circuit court shall order notice of said application to be served upon the mayor of said town or city and appoint a day for the hearing of such application.

"If upon the hearing of said application the said court shall sustain the said objection, the said tract or tracts of land shall be excluded. Such petition may be heard and determined by said court in term time or vacation, and any question of fact may be determined by said court without a jury.

"Whenever any portion of any city or town is excluded as aforesaid, such portion and the citizens thereof shall be thereby forever released from all debts, duties, or liabilities of the said city or town; and all public property, both real and personal, whether situated in the district so excluded or in the remaining district, and all rights and franchises belonging to such city or town at the time of exclusion, shall remain and be the property of such city or town."

of the exclusion suits here involved, (City of Ocoee v. West, and City of Ocoee v. Beggs, supra), the former words were held to mean that the electors must be actually registered for voting in the city, as well as otherwise qualified, at the time the suit for exclusion is filed; so that neither citizens who might have registered but did not can be counted to make more than one hundred and fifty and so defeat the application of the statute, nor can those be counted who register afterwards and before the trial. Whether Ocoee had one hundred and fifty or more "qualified electors" was in each exclusion suit a question of fact necessary to be determined and it was determined negatively.

■ The city being thus established to be a small one within the exclusion statute, it was also necessary to determine whether the land sought to be excluded was "virtually or commensurately excluded" from municipal benefits. These vague words have been thus explained in Durham v. Pentucket Groves, 138 Fla. 386, 189 So. 428, 429: "The statute has to do with the exclusion of lands from small towns that never should have been included in it or which as now constituted, should be in right and justice excluded from it. * * * There is no basis for the operation of the statute unless lands have been included in the municipality that are not susceptible to municipal improvement. In other words, there must be a commensurate benefit to the lands for the taxes imposed on it. * * * The statute involved here only affects lands that have received no benefits and are without prospect of receiving any by being in the municipality. Under such circumstances, the owners may have them released at any time and when released, they are freed from the obligations of the town. The owner may petition to have them excluded any time the conditions warranting exclusion arise." It is not clear whether all these tests must concur, or either might suffice. As to the case then before it the court made no indication

which applied, the sole question really being as to the consistency of the statute with the Florida constitution, but merely said: "In the absence of a showing to the contrary, we must assume that they (the lands) were legally excluded." We also must assume that legal grounds were proved in each exclusion here involved as against the city, both in the suits it defended and those it did not. And as between it and the landowners, there resulted a relief of the excluded lands from all debts and liabilities of the city, conclusively adjudged, and the city was no longer under duty to give municipal service.[3]

■ We come, therefore, to the effect of these judgments on the bondholders, who were not parties of record. In no like case before the Supreme Court of Florida have bondholders been parties, so that a judicial opinion could be given on this question. In the Pentucket Groves case, supra, the court took note that bonds were outstanding, and by way of dictum said: "It [the statute] was in effect long before the bonds in question were issued. It was prospective in operation and affected only those bond contracts made in the future. Bond purchasers were on knowledge of the statute and cannot complain of its provisions. * * * The purchaser of bonds of such municipalities takes them burdened with the provisions of the statute. * * * He takes nothing from the town when he purchases its bonds but its promise to pay when due. He did not acquire a lien on any of its lands." There is a further dictum: "If lands were excluded that were not so contemplated by the act, they may, under City of Winter Haven et al. v. [A. M.] Klemm and Son [132 Fla. 334, 181 So. 153], be required to bear their part of the burden but if they were properly excluded, there is no theory under which they can now have the burden imposed on them." This last sentence would seem to indicate that the bondholders might, though the city is bound, still question the propriety under the statute of any exclusion. But

---

[3] The Pentucket Groves case was followed in Town of Polk City v. Block 20, 138 Fla. 609, 189 So. 927, and Town of Eagle Lake v. Adams, 146 Fla. 165, 200 So. 367, in the application of the statute and exclusion decrees as between the property owners and their town.

the Winter Haven case which is cited had no relation to an exclusion decree under the statute, but involved a quo warranto by the State against the city.

On principle we think the dictum first quoted is the sounder one: "He (the bond purchaser) takes nothing from the town * * * but its promise to pay when due. He did not acquire a lien on any of its lands." In the case before us there was not a special levy of taxes made at the time of issuing bonds and to be collected through the years to service them, as has happened in Texas. In case of such a levy there is an inchoate lien on the property then in the taxing district for the express benefit of the bondholders which may well be regarded as their security. Neither have we assessments against benefitted property to be collected and applied to the bonds, where again the assessments are the security for the bonds. In one of these bond issues the language is: "For the prompt payment of this bond and interest thereon at maturity, and for the levying of taxes sufficient therefor, the full faith, credit and resources of said city are irrevocably pledged." In the other two issues the language is, "For the (prompt) payment of the principal and interest of this bond the full faith and credit of the said City of Ocoee are hereby irrevocably pledged." No lien is thereby created and no property pledged. The city merely agrees in good faith to tax from year to year the property it can tax, and otherwise so to manage its financial affairs, within the law, as to promptly pay these debts if possible. No failure to do this is alleged. The city cannot help its citizens moving away with their personal property, nor the exclusion according to law of lands to which it cannot render municipal service. The cost of such service might be in excess of the taxes that could be collected from the lands, so that exclusion might really be for the benefit of all concerned. Of course the good faith pledged would not allow of any collusion with landowners. It would however be ordinarily to the interest of the city and its other property owners to retain within the city lands sought to be excluded, that they might continue to help bear the municipal burdens. The city with an interest in the matter identical with that of its creditors and other property owners may well be held to represent them in the suits authorized by the statute in question. A private corporation thus binds its general creditors in litigating about the title to its property or debts due to it, or its other assets. If it loses the case, its creditors may not afterwards by garnishment or receivership or other remedy relitigate such claims. Their rights depend on their debtor's rights and perish with them. There is even greater reason why a public corporation, in respect to its power to tax and govern, should be held to represent and bind by its litigation those having only general claims against it. We sustain the District Court in so deciding.

Nor is there in this a want of due process. The State of Florida by the operation of its laws and courts has deprived these bondholders of no property right. They still have all they contracted for as above set forth. It is not alleged that the City of Ocoee was by the exclusions made insolvent, or that it is not better off by not having to render municipal services to the excluded lands, if that would make any difference. We express no opinion about that. If the bondholders have been deprived by the exclusions of any real advantage, it has still been by due process of law, for as has already been said, they were represented in the exclusion suits by the city, which had interests at stake similar to those of its general creditors, and was really the only proper party to litigate the matter. Even where special assessments made to pay bonds were involved, the bondholders were held constitutionally represented and bound by good faith judgments against the taxing district. Kersh Lake Drainage Dist. v. Johnson, 309 U.S. 485, 60 S.Ct. 640, 84 L.Ed. 881, 128 A.L.R. 386.

The judgment of the District Court is

Affirmed.