## HUFFMAN v. FORD MOTOR CO. et al.
### No. 11448.

United States Court of Appeals
Sixth Circuit.

March 3, 1952.

McAllister, Circuit Judge, dissented.

Herbert H. Monsky, Louisville, Ky., Herbert H. Monsky, Louisville, Ky., on brief, for appellant.

Louis Seelbach, Louisville, Ky., Eugene B. Cochran, Louisville, Ky., on brief, for Ford Motor Co.

Sol Goodman, Cincinnati, Ohio, for U.A. W.-C.I.O.

Before HICKS, Chief Judge, and ALLEN and McALLISTER, Circuit Judges.

ALLEN, Circuit Judge.

The principal question presented by this appeal is the validity of a seniority provision in a collective bargaining agreement between appellee Ford Motor Company, the employer, and appellee International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, CIO. Petition for declaratory judgment and answers by both appellees were filed. All parties moved for summary judgment. The court sustained the motions of the appellees and dismissed the action.

The case arises out of the following facts, which are uncontradicted:

Huffman, the appellant, was employed by the Ford Motor Company September 23, 1943. He entered the military service of the United States November 18, 1944, and was discharged July 1, 1946. Within thirty days he was reemployed by Ford, as his petition states, "with his seniority unimpaired and continuing to date from his original hiring-in date as provided by the federal statute (50 U.S.C.App. 308)."

Huffman, a member of the CIO, is still employed by the Ford Motor Company. His petition for declaratory judgment alleges in substance that he and approximately 275 other employees at the Ford plant in

Louisville, Kentucky, constitute a class whose positions on the seniority roster have been made lower than they rightfully would be under their true hiring-in dates. He alleges that employees of another class have had their positions on the seniority roster at the Louisville plant improved and stand higher than they rightfully would under their true hiring-in dates, due to a clause of the applicable collective bargaining contract between Ford and the CIO. These allegations are admitted by the CIO and by Ford with exception of the number of employees in each class. July 30, 1946, prior to Huffman's reinstatement, the CIO and Ford made the following agreement:

"Section 13–(a) Any employee covered by the terms of this contract who left his employment with the Company subsequent to May 1, 1940, in order to perform training or service in the land or naval forces or the Merchant Marine of the United States, (or the armed forces of the allies) or who shall hereafter leave his employment for such purpose while the United States is at war, shall accumulate seniority during his period of such service subsequent to May 1, 1940. He shall be reinstated on the basis of his accumulated seniority. * * *

"(c) Any veteran of World War II who was not employed by any person or company at the time of his entry into the service * * * and who is hired by the company after he is relieved from training and service * * * shall, upon having been employed for six (6) months and not before, receive seniority credit for the period of such service subsequent to June 21, 1941, provided:

* * * * * *

"(2) Such veteran shall not have previously exercised his right in any plant of this or any other company.

* * * * * *

"(d) It is further understood and agreed that, regardless of any of the foregoing, all veterans in the employ of the company at the time the Contract is thus amended shall receive seniority credit for their period of service, subsequent to June 21, 1941 in the land or naval forces or Merchant Marine of the United States or its allies, upon completion of their preliminary period."

Contracts negotiated between Ford Motor Company and the CIO in 1947 and 1949 readopted substantially the same provisions as to seniority rights of veterans.

■■ Since the appellees both moved for summary judgment, the facts alleged in the petition must be taken as true unless by the admissions, depositions or other evidence introduced the contrary appears. McCombs v. West, 5 Cir., 155 F.2d 601. But the material allegations of the petition were admitted by both appellees. This, therefore, was a proper case for summary judgment; McComb v. Southern Weighing & Inspection Bureau, 4 Cir., 170 F.2d 526; Harris Stanley Coal & Land Co. v. Chesapeake & Ohio Ry. Co., 6 Cir., 154 F.2d 450, certiorari denied 329 U.S. 761, 67 S.Ct. 111, 91 L.Ed. 656; and the question presented is one of law as to the validity of the collective bargaining contract under which Huffman and those similarly situated were deprived of their seniority in layoffs and furloughs in favor of veterans later employed but with longer military service.

Huffman alleges that the enforcement of these contracts results in discriminatory layoffs and furloughs of himself and those similarly situated. He contends that veterans with longer periods of military service but shorter periods of employment with Ford are favored above Huffman and his class. He therefore claims that the provisions of the contract are discriminatory and void as to him and those similarly situated because they give to veterans not employed at the time they entered military service seniority credits for their period of armed service after June 21, 1941.

The District Court, as the basis for dismissing the action, found: " * * * the Court, being sufficiently advised, is of the opinion that the collective bargaining agreement expresses an honest desire for the protection of the interests of all members of the union and is not a device of hostility to veterans. The Court finds that said collective bargaining agreement sets up a

seniority system which the Court deems not to be arbitrary, discriminatory or in any respect unlawful."

Huffman first contends that the collective bargaining agreement violates rights of veterans previously employed by the Ford Motor Company, which were secured under the Selective Training and Service Act of 1940, 50 U.S.C.App., § 308, 50 U.S.C.A.Appendix, § 308.[1]

▮ We think the District Court correctly held that this contention could not be sustained. This statute, among other things, gives veterans protection within the framework of the seniority system plus a guaranty against demotion or termination of employment without cause for one year after reemployment. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230. But the Supreme Court in that case points out that a furlough or a layoff is not a discharge. The person laid off is put on a waiting list for reassignment. He has a right to be restored to work under specific conditions and insurance and other benefits continue to accrue to him. In the Fishgold case the court held that the statute was not violated by a slackening of work which caused the employee to be laid off by operation of a seniority system. It follows that the layoffs and furloughs alleged to have displaced Huffman and others similarly situated in favor of veterans who had been employed later but had been engaged in a longer period of war service, do not violate § 308, 50 U.S.C.App., 50 U.S.C.A.Appendix, § 308.

A more difficult question is presented as to Huffman's second contention. This is that the CIO and Ford, in the contracts attacked, set up a seniority system which is unlawful because of discrimination. The statute, § 308, 50 U.S.C.App., 50 U.S.C.A. Appendix, § 308, is construed in the Fishgold case, supra; Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328; Aeronautical Indus. Dist. Lodge 727 v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, 93 L. Ed. 1513; but the proper scope of collective bargaining contracts has not been broadly adjudicated. In Aeronautical Lodge v. Campbell, discussed later, the change of bargaining contract alleged to be discriminatory was shown to be for the benefit of the entire union. Huffman's principal contention here is that the contract is not for the benefit of the entire union; that the union as bargaining agent was not authorized to contract away his seniority rights, and the rights of those similarly situated. He urges that such a contract cannot legally ignore the factors ordinarily considered relevant in establishing a seniority system, such as length of employment in the service of the particular employer, skill, ability, and merit. He attacks the provision under which some employees are given preference over others in case of layoffs because of military service entered into before employment, that is, upon the basis of matters unconnected with the employment, antedating it and in no way related to the interest of the union as a whole.

▮ The question presented is not whether a legislature could have imposed this change in seniority provisions through the medium of statute. Enactments granting preferences to veterans both in the secur-

---

[1] "(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer * * *

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

*    *    *    *    *    *

"(c) Any person who is restored to a position in accordance with the provi-

sions of paragraph (A) or (B) of subsection (b) shall be considered as having been on furlough or leave of absence during his period of training and service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

ing of employment and in ratings for civil service examinations have been passed and are constitutional. Section 459, 50 U.S.C. App., 50 U.S.C.A.Appendix, § 459; Fishgold v. Sullivan Drydeck and Repair Corp., supra. Cf. Sections 486-10 and 486-13, Ohio General Code; State ex rel. King v. Emmons et al., State Civil Service Commission, 128 Ohio St. 216, 190 N.E. 468. The question squarely presented is whether the union and management can by contract create preferential seniority based upon length of military service in men not employed when they entered the armed services as against men, also veterans, who were employed when they entered the armed services.

The Ford Motor Company and the CIO contend that the case is decided in their favor by Aeronautical Lodge v. Campbell, supra [337 U.S. 521, 69 S.Ct. 1290], in which the Supreme Court upheld a collective bargaining contract which gave priority in layoffs to union officials over other employees. The court held that the provision giving seniority to officials of the union over workers employed earlier than such officials was valid upon the ground that the gain in continuity of administration of the union due to the retention of these officials in case of layoff was a benefit to the entire union membership. The court emphasized the importance of this feature of benefit to the union as a whole. Speaking of the necessity of continuity in service for shop stewards or union chairmen, the court said: "Because they are union chairmen they are not regarded as merely individual members of the union; they are in a special position in relation to collective bargaining for the benefit of the whole union. To retain them as such is not an encroachment on the seniority system but a due regard of union interests which embrace the system of seniority rights."

The court declared "it would be an undue restriction of the process of collective bargaining (without compensating gain to the veteran) to forbid changes in collective bargaining arrangements which secure a fixed tenure for union chairmen, whereby veterans as well as nonveterans are benefited by promoting greater protection of

their rights and smoother operation of labor-management relations." In making this decision the court pointed out that "All this presupposes, obviously," that the agreement construed "expresses honest desires for the protection of the interests of all members of the union and is not a skillful device of hostility to veterans."

■ We see nothing in this ruling which validates contracts made without regard for the protection of the interests of all members of the union. We think that action which results in widespread discrimination is not justified by the lack of definite malice or hostility. Well-meaning desires, not dishonest in the sense of expressing deliberate hostility, may at times, due to failure to consider all pertinent factors, result in discriminatory measures. The end result for Huffman and those similarly situated is the same as if there had been deliberate hostility. No evidence was presented on the question but we assume that both the union and Ford, in executing this bargaining contract, had a well-meaning desire to protect veterans who had had no chance for employment prior to their service in the armed forces. But in so doing they clearly discriminated against other veterans who had entered the military service when already employed by Ford. We think such a contract is not authorized under the National Labor Relations Act.

■ Section 157, 29 U.S.C., 29 U.S.C.A. § 157 provides that employees have the right to bargain collectively and "to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection." This means that in entering into labor contracts the bargainers must make their agreements with a view to the rights of the entire group bound by them, and not enter into agreements which discriminate against one part for the benefit of another. Gauweiler v. Elastic Stop Nut Corp., 3 Cir., 162 F.2d 448, 451. As pointed out in that case, which was approved by the Supreme Court in Aeronautical Lodge v. Campbell, supra, no discrimination existed against veteran-employees. "Discrimination," the court declared, "would, obviously, change the whole picture."

Under the National Labor Relations Act just as under the Railway Labor Act the bargaining representative of the employees rests under the obligation to exercise fairly without discrimination the power conferred upon it in behalf of all those for whom it acts. Cf. Steele v. Louisville & N. R. Co., 323 U.S. 192, 202, 203, 65 S.Ct. 226, 89 L.Ed. 173.

It is true, as Ford asserts, that there is no discrimination under the present system between Huffman and the nonveterans of his class. As to nonveterans, he comes back into employment on the same step of the "seniority escalator" where he would have been if he had never been absent in the military service. Fishgold v. Sullivan Drydock & Repair Corp., supra. Where the discrimination arises is between veterans, like Huffman, who were employed, left their employment to enter the armed services and were reemployed, in conformity with the statute, and veterans not employed prior to war service. All such veterans who subsequent to June 21, 1941, have served a longer time in the armed forces than Huffman and those similarly situated are given a preferential seniority under a contract provision which has no relevance to terms and conditions of work or the normal and usual subjects of contracts between union and employer.

This was the test laid down by the Supreme Court in Steele v. Louisville & N. R. Co., supra, 323 U.S. at page 203, 65 S. Ct. at page 232. In that case the Supreme Court reversed a decision of the Supreme Court of Alabama which upheld a contract between the union and the employer which discriminated against negro firemen. The court declared: "This does not mean that the statutory representative of a craft is barred from making contracts which may have unfavorable effects on some of the members of the craft represented. Variations in the terms of the contract based on differences relevant to the authorized purposes of the contract in conditions to which they are to be applied, such as differences in seniority, the type of work performed, the competence and skill with which it is performed, are within the scope of the bargaining representation of a craft, all of whose members are not identical in their interest or merit. * * * Without attempting to mark the allowable limits of differences in the terms of contracts based on differences of conditions to which they apply, it is enough for present purposes to say that the statutory power to represent a craft and to make contracts as to wages, hours and working conditions does not include the authority to make among members of the craft discriminations not based on such relevant differences. Here the discriminations based on race alone are obviously irrelevant and invidious."

While, as pointed out in Aeronautical Lodge v. Campbell, supra, there are variations in the use of seniority, such as plant seniority, shop seniority, seniority conditioned upon existence of a probationary period of employment, etc., we are cited to no case which approves the creation of seniority rights in a collective bargaining contract upon the basis of acts done or service rendered prior to entering upon the employment in which the seniority is claimed. We think this is "superseniority" just as the seniority claimed in Trailmobile Co. v. Whirls, supra, was superseniority. It penalizes Huffman for working for Ford before his military service.

Under the uncontradicted facts the seniority system as to Huffman and those similarly situated is discriminatory. Plainly a contract which, in case of layoff, prefers men without experience over men with experience, no other facts appearing and no other valid reasons for preference existing, is discriminatory. When an employee who entered the Ford plant in 1945 is retained in layoffs over Huffman, who entered in 1943, Huffman is discriminated against.

This is a case sui generis. From a feeling of generosity toward men called to the war, the union and the employer have united in a sweeping contract which ultimately and in ways probably not contemplated discriminates against veterans who also gave their all in the service of the country. To hold that this feature of the contract is valid is to open wide the door to agreements between union and company not in the interest of the union as a whole.

176

The contract is invalid as to Huffman and those veterans similarly situated.

The judgment of the District Court is reversed and the case is remanded for further proceedings in accordance with this opinion.

McALLISTER, Circuit Judge (dissenting).

I am of the opinion that the order of the district court dismissing appellant's petition should be affirmed for the reasons, as therein set forth, that the collective bargaining agreement expressed an honest desire for the protection of the interests of all members of the union; that it was not a device of hostility to veterans; and that the seniority system therein provided was not arbitrary, discriminatory, or unlawful.