INTERNATIONAL ASSOCIATION OF FIREFIGHTERS,
LOCAL NO. 136, et al., Appellees,

v.

CITY OF DAYTON CIVIL SERVICE BOARD et al., Appellants.

[Cite as *Internatl. Assn. of Firefighters, Local No. 136 v. Dayton Civ. Serv. Bd.*, 157 Ohio App.3d 236, 2004-Ohio-2728.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20089.

Decided May 28, 2004.

---

Susan D. Jansen and Diana S. Brown, for appellees.

John J. Danish and John C. Musto, for appellants.

FREDERICK N. YOUNG, Judge.

{¶ 1} The city of Dayton Civil Service Board, the Dayton City Commission, and ten individual officials of the city, all defendants, are appealing from the judgment by the trial court sustaining plaintiffs' motion for declaratory judgment and injunctive relief. This case was filed by the International Association of Fire-fighters, Local Union No. 136, the Fraternal Order of Police, Captain John C. Post Lodge No. 44, and 15 individuals as citizens and residents of the city of Dayton, Ohio, to challenge the "fire diversity plan" promulgated and about to be implemented by the defendants. The issues raised on appeal are set forth in the following two assignments of error by the appellants:

{¶ 2} "1. The trial court erred as a matter of law in determining that the Dayton Charter prohibited preference points on competitive classified civil service exams for honorable military service, successful prior Dayton employment and specialized training.

{¶ 3} "2. The trial court erred as a matter of law in determining that the appellees met the jurisdictional requirements of a taxpayer's action."

{¶ 4} The facts of the case and the arguments of both parties as well as the reasoning of the judgment of the trial court are set forth below in the portions of the court's judgment that are relevant to the issues on appeal:

{¶ 5} "The City of Dayton has a long and storied history of litigation regarding its Civil Service system and its efforts to diversify its employee population. The City of Dayton is a municipal corporation established and governed pursuant to the Constitution of the State of Ohio and the City Charter. Pursuant to the City Charter and the Ohio Constitution, the Civil Service Board establishes rules governing the City's civil service. Between the years of 2000 and 2001, the City

of Dayton, in conjunction with several other entities including Plaintiffs, created a 'Fire Diversity Plan.' This Fire Diversity Plan included a proposed change to the Civil Service Rules. In August of 2002, the Civil Service Board voted to amend Rule 6 of the Civil Service Rules and Regulations.

{¶ 6} "The proposed changes allowed 'preference points' to be awarded on the firefighter civil service entrance exam to honorably discharged military veterans, persons that had satisfactorily completed six months or more of full time employment with the City of Dayton, and persons selected who had successfully completed training in the Fire Apprentice Program. According to the Fire Diversity Plan, individuals may participate in the Fire Apprentice Program only if they are chosen by a 'Selection Committee' composed of City of Dayton representatives and others. However, the Fire Apprentice Program is no longer active at this time due to budget constraints. Nevertheless, the court will consider the Fire Apprentice Program as a part of this decision, as it continues to be a category of individuals who are awarded preference points.

{¶ 7} "The City Commission approved the proposed amendments to Rule 6 regarding candidates for the position of firefighter recruits by Resolution No. 5220–02, dated August 21, 2002. As the Fire Apprentice Program was administered, the apprentices are selected by a five-person committee consisting of two individuals appointed by Plaintiff IAFF Local 136, two individuals appointed by the City of Dayton and one individual appointed by Sinclair Community College.

{¶ 8} "On August 26, 2002, the Civil Service Board issued an Exam Announcement indicating that it would hold a competitive examination for the position of firefighter recruit and announced its intention to comply with Civil Service Rule 6, as amended, in scoring the exams. The Board held a firefighter recruit exam on September 13, 2002. On the same date Plaintiffs filed this action for declaratory judgment and injunctive relief to prevent the Board from scoring the firefighter recruit exam pursuant to amended Civil Service Rule 6. Plaintiffs filed this action without sending a written request to the City Law Director to take legal action concerning Civil Service Rule 6.

{¶ 9} "Plaintiffs seek an order declaring the recent amendments to Rule 6 of the Civil Service Rules for the City of Dayton null and void as being in violation of the City Charter. Plaintiffs also seek a permanent injunction enjoining the Civil Service Board, the City Commission and any other agent of the City from enforcing or applying the relevant amendments to Rule 6 of the Civil Service Rules.

{¶ 10} "Article XVIII, Section 3 of the Ohio Constitution states:

{¶ 11} " 'Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.'

{¶ 12} "The aforementioned is referred to as the 'home-rule' authority of municipal corporations. That section of the Ohio Constitution grants to municipal corporations the power of self government, provided the municipal ordinances do not conflict with the general laws of the State of Ohio. The Charter that the City of Dayton enacted does not conflict with any general laws, nor does it violate the Ohio Constitution. The City of Dayton, therefore, had the authority, as a home-rule municipality, to enact Civil Service rules consistent with the City Charter. Therefore, the Dayton City Charter, specifically Section 96, and not the Civil Services statutes in Ohio, is the legislative authority to be considered. With the aforementioned preface, the Court will now consider the merits of the motion. * * *

{¶ 13} "Defendant also argues that Plaintiffs lack standing to bring a taxpayer's action because they did not send a written request to the Law Director before they filed this suit as required by ORC § 733.59.

{¶ 14} "ORC § 733.59 provides:

{¶ 15} " 'If the . . . city director of law fails, upon the written request of any taxpayer of the municipal corporation, to make any application provided for in sections 733.56 to 733.58 of the Revised Code, the taxpayer may institute suit in his own name, on behalf of the municipal corporation. . . . No such suit or proceeding shall be entertained by any court until the taxpayer gives security for the cost of the proceeding.' [Ellipsis sic.]

{¶ 16} "The Ohio Supreme Court discussed the issue of standing as it relates to a taxpayer's suit in *White v. Cleveland,* 34 Ohio St.2d 37 [63 O.O.2d 79, 295 N.E.2d 665] (1973) and *Nimon v. Springdale,* 6 Ohio St.2d 1 [35 O.O.2d 1, 215 N.E.2d 592] (1966). The Court found that when the argument raised is that the taxpayer failed to make a written request, 'the substantial question then comes down to this: Did the circumstances here show that it would have been unavailing to have made a request upon the solicitor?' *White* at 42 [63 O.O.2d 79, 295 N.E.2d 665]. In *White,* the Court found that when the Law Director had already issued a statement that opposed the position the taxpayer was taking in its suit, it 'foreclosed any probability that the appellant city might consent to become a party plaintiff in a mandamus action,' and the requirements of ORC § 733.59 were waived. *Id.* In *Nimon* the Court found that a request upon the solicitor would have been unavailing when the solicitor formalized in writing his opinion and an 'unalterable stand was made.' *Nimon* at 6 [215 N.E.2d 592].

{¶ 17} "According to the test the Ohio Supreme Court set out, this court must ask whether the circumstances in this case demonstrate that a request upon the Law Director would have been futile or unavailing. The Court finds that similar to the taxpayer in *Nimon,* any request upon the Law Director by Plaintiffs would have been unavailing in this case because the Law Director had already been defending the proposed changes to Rule 6 of the Civil Service Rules. In another case relating to the Dayton Civil Service Board, the Second Appellate District found that the Law Director's views on this issue are obvious and stated, 'she has argued that . . . all actions taken by the City Commission are consistent with the City Charter.' [Ellipsis sic.] *Dayton Civil Service Commission v. Dayton* (2d Dist. 7/2/2002), Case No. 19162. The litigation in that matter stemmed from a dispute between the Dayton City Commission and two members of the Dayton Civil Service Board concerning the same Fire Diversity Plan that is disputed in the present case. *Id.* The petitioners therein were requesting a legal opinion from the Law Director on a similar proposal to award preference points that is disputed in the present case. *Id.* The court went on to state that the Law Director's views on the issue were obvious and that it would be impossible to review the records and be unaware of the Law Director's position on the matter. *Id.*

{¶ 18} "Although the Law Director did not evidence her position in writing, as in *Nimon* and *White,* the issue is whether it would serve any purpose to request that the municipal corporation bring the suit. The Law Director in this matter had already made it clear it was her opinion that the changes to Rule 6 of the Civil Service Rules did not violate the City Charter. She was named as a respondent in a similar case and argued in favor of the changes to Rule 6. It is clear from these circumstances that a request upon the Law Director to bring suit would have been unavailing. Therefore, Plaintiffs have standing to bring a taxpayer action.

{¶ 19} "This Court will now address the substance of Plaintiff's Complaint and Motion. Plaintiffs claim that the changes to the Civil Service Rules, and specifically Rule 6, Section 11, violate the City Charter. That section, as adopted by the Civil Service Board on August 12, 2002, states:

{¶ 20} " '*SECTION 11. FIREFIGHTER RECRUIT EXAMINATION*

{¶ 21} " 'A. Subject to paragraph B of this section, a person obtaining a passing grade on an open competitive examination for the position of Firefighter Recruit is eligible to receive preference points as follows:

{¶ 22} " '(1) A person who prior to the date of examination has been honorably discharged from service with any branch of the United States military is entitled to have five (5) preference points added to that person's passing grade;

{¶ 23} " '(2) A person who prior to the date of examination is employed by the City and has satisfactorily completed six (6) or more months of full time employment with the City, as documented by City performance evaluations, is entitled to have five (5) preference points added to that person's passing grade;

{¶ 24} " '(3) A person who prior to the date of examination has successfully completed Phase I (EMT–B) Training in the Fire Apprentice Program conducted by Sinclair Community College in cooperation with the City of Dayton is entitled to have five (5) preference points added to that person's passing grade.

{¶ 25} " '(4) A person who prior to the date of examination has successfully completed Phase II (EMT–P) Training in the Fire Apprentice Program conducted by Sinclair Community College in cooperation with the City of Dayton is entitled to have five (5) preference points added to that person's passing grade.'

{¶ 26} "The City of Dayton asserts that the Ohio Constitution and Dayton's Charter permit preference points to be granted to certain candidates for the firefighters civil service exam. Both parties stipulate that firefighters are within the competitive class of the classified service. Section 95 of the Dayton City Charter provides, 'the competitive class shall include all positions and employment for which it is practicable to determine the merit and fitness of applicants by *competitive examination* (emphasis added).' By including the firefighters within this competitive class, competitive examination is the manner in which the City must determine the merit and fitness of each applicant.

{¶ 27} "The query, then, becomes what is a competitive examination? The Dayton City Charter does not include a definition of 'competitive examination.' However, Section 96 of the Dayton City Charter does provide:

{¶ 28} " 'The (Civil Service) Board, subject to the approval of the Commission, shall adopt, amend, and enforce a code of rules and regulations, providing for appointment and employment in all positions in the classified service, based on merit, efficiency, character, and industry, which shall have the force and effect of law; shall make investigations concerning the enforcement and effect of this chapter and of the rules adopted.'

{¶ 29} "Section 3 of Rule 6 in the Civil Service Rules also provides:

{¶ 30} " 'Examinations may consist of any one or more of the following:

{¶ 31} " 'A. *Written Test*. This part, when required shall include a written demonstration designed to show the familiarity of the competitor's skills, knowledge, and abilities involved in the class of positions to which they seek appointment, and to ascertain special aptitudes, when required.

{¶ 32} " '(B) *Performance Test*. This part, when required, shall include such tests of performance as would determine the ability of candidates to perform the work involved.

{¶ 33} " '(C) *Oral Test*. This part, when required, may include a personal interview with competitors for classes of positions where the ability to deal with others, to meet the public, to make an oral presentation, or other similar qualifications are to be determined. This part may also be designed to elicit a demonstrations of the criteria enumerated in subsection (A) above.'

{¶ 34} "Black's Law Dictionary defines 'competitive civil service examination' as an 'examination which conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed by other examiners of equal ability and experience.' The contents of the examinations to be given provided by Section 3 of Rule 6 of the Civil Service Rules are all objective standards. Further, the Dayton City Charter requires that the competitive class of the classified service of civil service employees be determined by competitive examination. In addition, Section 5 of the Rule 6 relating to Open Competitive Examinations of the Civil Service Rules provides, in part, that 'examination grades shall be computed in a manner consistent with professional psychometric standards.'

{¶ 35} "The next inquiry, then, becomes whether the awarding of additional points to those who take the Firefighter's Examination, which is included in the competitive class of the classified civil service in the City of Dayton, for one of the three categories of persons at issue herein violates the Dayton City Charter. Those categories for which additional points may be awarded pursuant to Rule 6 of the Civil Service Rules will be addressed individually below. The issue before this court is *not* the merits of the goal of diversity, which are not questioned, but whether the means by which the City of Dayton is attempting to achieve the goal of diversity are in conflict with the City Charter.

{¶ 36} "The first issue to be addressed is whether the awarding of additional points for those who have successfully completed the Fire Apprentice Program violates the Dayton City Charter. The process permits the arbitrary selection of members to the committee who selects participants in the Fire Apprentice Program and permits non-objective factors to be considered in selecting applicants for the program, who may then receive preference points on the firefighter's examination. To permit a candidate for the competitive class of the classified civil service in the City of Dayton to be awarded preference points for the successful completion of the Fire Apprentice Program violates the mandate of the Dayton City Charter that all appointments to that class be made by competitive examination. The explicit language of the Dayton City Charter and the Civil Service Rules, when read together, provide that appointment to the competitive

class of the classified civil service be made by competitive examination, and that those examinations are defined as written, oral or performance tests. Nowhere does the City Charter contemplate that such appointments be made by anything other than those examinations. The awarding of preference points for successful completion of the Firefighter Apprentice Program amounts to grading competitive examinations in a manner inconsistent with and violative of the Dayton City Charter.

{¶ 37} "Defendants rely heavily on *Ebersole v. Hurst*, 111 Ohio App. 76 [12 O.O.2d 325, 165 N.E.2d 235] (1960) to support their argument that awarding preference points for prior public service does not violate the City Charter. However, the *Ebersole* decision was not decided under the auspices of the Dayton City Charter. Instead, the *Ebersole* decision was based upon former O.R.C. § 143.341, which permits an applicant for promotion to receive preference because of his prior employment with the city. *Id.* However, as discussed above, the case *sub judice is not* one that must be interpreted pursuant to the Civil Service statutes in Ohio, but must be considered in light of the mandates and limitations set forth in the Dayton City Charter. That Charter requires appointment to the competitive class of the classified civil service be made by competitive examination. Unlike in the *Ebersole* case, the Dayton City Charter does not permit or provide for the awarding of preference points for prior service with the City of Dayton. Therefore, the provisions in the Civil Service Rules of the City of Dayton, and particularly Rule 6, Section 11(A)(2) which permit an additional five (5) points to be awarded to a person who prior to the date of examination is employed by the City and has satisfactorily competed [sic] six (6) or more months of full time employment with the City are in violation of the other applicable sections of the Civil Service Rules and the Dayton City Charter.

{¶ 38} "Defendants also rely on a number of cases that have upheld the award of preference points. However, those cases do not construe the Dayton City Charter, but instead construe the Ohio Constitution and various Ohio statutes which *specifically* permit an award of preference points, where the Dayton City Charter lacks any such provision.

{¶ 39} "Plaintiffs argue that the awarding of preference points on the basis of military service is an artificial inflation of a score intended to reflect the relative ability of candidates to perform the job of firefighter. Likewise, in the cases cited by Defendants where preference towards military veterans has been upheld, there has been a statute that requires this preference or the applicable City Charter permits such preference. *See Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 [99 S.Ct. 2282, 60 L.Ed.2d 870] (1979). *See King v. Emmons*, 128 Ohio St. 216 [190 N.E. 468] (1934). The Dayton City Charter does not require or even permit these preferences. The Charter clearly states that all

appointments or employment in the competitive class should be pursuant to competitive examination.

{¶ 40} "The Dayton City Charter and the Civil Service rules define an examination as consisting of three possible components: a written test, an oral test, or a performance test. Preference points awarded to any one of the three subject categories herein does not fall within the City's own definition of an examination. The awarding of preference points takes the examinations outside the contemplated realm of competitive examination as the same is mandated in the Dayton City Charter. The Court concludes and finds that the awarding of preference points for the above three categories indicated in Rule 6, Section 11 of the Civil Service Rules violates the Dayton City Charter.

{¶ 41} *"CONCLUSION*

{¶ 42} "Section 96 of the Charter for the City of Dayton specifically states the hiring of applicants that fall within the competitive class shall be determined by competitive examination. The amendments to Rule 6, Section 11 of the Civil Service Rules whereby an applicant may be awarded preference points are violative of the City Charter. The award of preference points to the categories of individuals at issue herein is tantamount to an attempt by the City of Dayton to circumvent the mandates of the City Charter and other provisions of the Civil Service Rules. This Court finds that the recent amendments to Rule 6, Section 11 of the Civil Service Rules for the City of Dayton null and void as being in violation of the City Charter. This Court further finds that a permanent injunction enjoining the Civil Service Board, the City Commission and any other agent of the City from enforcing or applying the relevant amendments to Rule 6, Section 11 of the Civil Service Rules is necessary. A permanent injunction enjoining the Civil Service Board, the City Commission and any other agent of the City from enforcing or applying the amendments to Rule 6, Section 11 of the Civil Service Rules is hereby ORDERED. The City of Dayton, the Civil Service Board and the City Commission are hereby further enjoined from appointing any person to the position of firefighter recruit from the list promulgated from the September 13, 2002 firefighter examination so far as the same was scored pursuant to Rule 6, Section 11 of the Civil Service Rules or from applying such scoring or preference points in the future.

{¶ 43} "IT IS SO ORDERED. (Docket 32)."

{¶ 44} In their first assignment of error, the defendants-appellants argue that the trial court misinterpreted the law, did not follow important precedents, and inappropriately substituted its judgment for that of the board and city commission, as well as other arguments. The heart of their case in the first assignment of error is that the trial court did not adhere to the unanimous

decision of the Ohio Supreme Court which broadly defines the key phrase "competitive examination" found in the civil service section of the Constitution of Ohio, Section 10, Article XV. *State ex rel. King v. Emmons* (1934), 128 Ohio St. 216, 190 N.E. 468, cited in the trial court's opinion.

{¶ 45} We agree.

{¶ 46} The key phrase "competitive examination" appears not only in the Ohio Constitution but in Section 95, the civil service section of the Dayton Charter.

{¶ 47} The Supreme Court in *King,* supra, was considering two code sections of the state that granted preference points for civil service applicants who had served in the armed forces of the United States. The relative portions of the decision are set forth below:

{¶ 48} "We come, therefore, to the vital question in the case:

{¶ 49} "Is the preference accorded under Sections 486–10 and 486–13, General Code, and cognate sections, a violation of Article XV, Section 10 of the Constitution of Ohio? * * *

{¶ 50} "Article XV, Section 10 of the Ohio Constitution, reads:

{¶ 51} " 'Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision.'

{¶ 52} "Under this provision, before any appointment or promotion in the civil service may be made, the authorities must ascertain: (a) the degree of the candidate's merit, and (b) the degree of his fitness. * * *

{¶ 53} "These qualities are to be ascertained as far as practicable by competitive examination. * * *

{¶ 54} "The relator's argument appears to be grounded on the inarticulate major premise that the examination required by the constitution must consist only of questions and the candidates' responses. Certainly, written examinations are not required. Is the process of examination limited to the testing of knowledge and education by means of interrogations and answers, or may it embrace a wider inquiry into the underlying experience of the applicant? * * *

{¶ 55} "Reference to current civil service practice, in this and other jurisdictions, reveals at once that such wider inquiry is practically universal. Age, sex, health, physical qualifications, preliminary education, practical experience, these and many other things are scrutinized in determining merit and fitness. * * *

{¶ 56} "Bearing in mind that appointments and promotions are dealt with in the same terms in the constitution, it becomes apparent that by practical

construction, at least, the term 'examination' has been made to mean much more than the testing of knowledge by questions and answers.

{¶ 57} "It may, of course, be argued that such practical construction, even though universal and long continued, does not necessarily settle the constitutional question. This court, however, has upheld the constitutionality of an act which went even further. In *Hile v. City of Cleveland* [(1928)] 118 Ohio St., 99, 160 N.E., 621, a section of the city charter which provided that prior experience might be substituted entirely for a written examination was held not to violate Article XV, Section 10 of the Constitution.

{¶ 58} "In seeking to ascertain what meaning the framers of the constitutional provision sought to express by the words 'competitive examination' we may fairly survey civil service practice generally, as it then existed. We must assume that they meant to include in the term those elements then generally considered making up the final marks. Such survey reveals an almost universal inclusion of elements other than knowledge as tested by questions and answers. * * *

{¶ 59} "But if it be conceded that an examination to ascertain merit and fitness may consist of other inquiries, in addition to those relating merely to knowledge, can we say that the legislature is without power to prescribe a reasonable weight to be given to military service? In our opinion the weight prescribed in this statute is neither so arbitrary or so unreasonable as to violate the constitution. * * *

{¶ 60} "To hold this legislation unconstitutional would appear to require a course of reasoning leading logically to serious consequences. It might require an adherence to the result of the question and answer examination so strict as to eliminate eligible lists. The absolute high man might have to be the only one certified for appointment. Such rigidity and disregard of all personal equations would greatly change the civil service system as we now have it. * * *

{¶ 61} "Authorities are not wanting to the effect that legislative provisions, such as the one under consideration, are not unconstitutional. * * *

{¶ 62} "In our opinion, the provisions of Sections 486–10 and 486–13, General Code, and of the civil service regulations based thereon, are not in violation of the Constitution of Ohio of the Constitution of the United States. The judgment of the Court of Appeals is affirmed."

{¶ 63} Inasmuch as the Supreme Court of Ohio has broadened the scope of competitive examination to include other factors than scores on a written or oral examination, we are convinced that the same analysis must apply to the Dayton Charter, which stands in relationship as a Constitution to the new and somewhat controversial civil service rules examined in this case. We find that the defendants have authority under the Dayton Charter to implement new rules through

the civil service commission to seek the goal of diversity in the city's departments following the authority of the Supreme Court of Ohio in *King,* supra. We sustain the first assignment of error and reverse that part of the judgment of the trial court.

{¶ 64} In their second assignment of error, the defendants-appellants argue that the trial court committed error in finding that the plaintiffs met the jurisdiction requirements of the taxpayers' action because they failed to submit written request to the law director and they failed to give security for the costs of the proceedings.

{¶ 65} The trial court adequately and properly dealt with the first argument, that of failing to give the law director the request to initiate the action, and to the extent that the court's decision covers that argument, we approve and adopt it as our own.

{¶ 66} We note that the trial court is referring to the actions of the previous law director, not the current one. However, as the appellees point out in their brief:

{¶ 67} "The Diversity Plan indicates that the City's Law Department, through its Law Director and an Assistant City Attorney, were 'involved in the process.' (Stip., Exhibit 5 at p. 52). The fact that the City's Law Department was actively involved in the promulgation of the Diversity Plan, including the awarding of 'preference points' on the Civil Service examination, made it reasonably apparent that the Law Director would not be amenable to bringing suit to enjoin the implementation of the amendments to Civil Service Rule 6 that direct the awarding of 'preference points,' as defined in the Diversity Plan.

{¶ 68} "In addition to participating in the development of the Diversity Plan, which directs the awarding of 'preference points,' the current Law Director signed the City Commission's Resolution No. 5220–02 that approved the amendments to Civil Service Rule 6. (See, Stip., Exhibit 4). At the point that Resolution # 5220–02 was signed by the Law Director, he was well aware of the alleged improprieties of awarding preference points to civil service applicants because said improprieties were raised by the two (2) former Civil Service Board members, the Secretary–Chief Examiner and the Assistant Chief Examiner, all of whom were summarily removed from their positions by the City Commission due to disputes and/or disagreements over the legality of the Diversity Plan.

{¶ 69} "Under these circumstances and the binding precedent, the trial court correctly concluded that the written request on the Law Director would be unavailing and that Appellees met the jurisdictional requirements to bring this taxpayer's action." Brief, 16–17. We agree with the appellees on this issue.

{¶ 70} The second argument, that a failure to give security prevents the case from qualifying as a taxpayer's action, was not addressed by the trial court, and this court has barred a claim for a taxpayer's action when the taxpayers-plaintiffs did not post any security. *Bowshier v. Village of N. Hampton* (May 10, 2002), Clark App. No. 2001 CA 63, 2002 WL 940125. In that case, no attempt was made by the plaintiffs to ascertain the needed security. This court stated in its opinion that "[t]he plaintiffs should have sought to have the trial court determine the required security," at 7, 2002 WL 940125. The appellees have pointed out that that is exactly what they did in this case when in their reply brief they stated: "Plaintiffs will, upon request of this Court, file such security that this Court deems necessary to maintain this action." (Docket 26, page 14.)

{¶ 71} The second assignment of error is, therefore, overruled, and the decision of the trial court finding this action to be a proper taxpayer's suit is affirmed.

{¶ 72} Having reversed in part, and affirmed in part, we remand this case to the trial court for such further proceedings as may be proper in accordance with this opinion.

> Judgment reversed in part,
> affirmed in part
> and cause remanded.

WOLFF and GRADY, JJ., concur.