Allen, J.
 

 The particular sections of the Municipal Code which are in question here are 821-1, 821-2, 821-6, 821-7, 821-8 and 821-12, which read as follows:
 

 Section 821-1.
 
 “Definition.
 
 The term ‘corn sugar’ as used in this ordinance, shall be construed as any monosaccharide or mixture of monosaccharides, derived from grain or vegetable substances, sold in the dry state, and shall include compounds known as invert or brewer’s sugar.”
 

 Section 821-2. “In addition to other licenses, if any, required by law or ordinances, any person, firm or corporation engaged or intending to engage in the business of buying and selling corn sugar shall, before so engaging in that business secure a license in the
 
 *457
 
 manner and under the rules and regulations hereinafter set forth.”
 

 Section 821-6. “Every licensee hereunder shall keep a continuous inventory, showing the amount of corn sugar in the possession of said licensee. Said licensee shall also keep permanent bound books in which shall be recorded all purchases of corn sugar, showing the dates, amounts purchased and from whom purchased. Every licensee shall likewise keep in permanent bound books a record of all sales of corn sugar, which record shall include the correct name and address of the purchaser, the kind and amount purchased, the date thereof, and such other information as may be required by the chief of police. All such records shall be legibly written in ink, in the English language, and shall be open to inspection by the commissioner of assessments and licenses, the chief of police, and/or their agents, at all reasonable times.”
 

 Section 821-7. “On or before the fifth day of each month every licensee shall make out and deliver to the chief of police, or his duly authorized representative, a report on a blank to be furnished by the police department for that purpose, a legible and correct copy of the records required to be kept, containing all of the particulars of the inventory and records of the purchases and sales during the preceding month, heretofore required to be kept.”
 

 Section 821-8. “No licensee hereunder shall sell corn sugar to any person, firm or corporation, whom he has reasonable grounds to believe is purchasing the same under a false or fictitious name or address, or whom he has reasonable grounds to believe intends to use the same in a manner prohibited by law.”
 

 Section 821-12. “It shall be unlawful for any person, firm or corporation to buy any corn sugar from a licensed dealer without giving the correct name and address of such purchaser.”
 

 The ordinance contains certain other provisions
 
 *458
 
 with reference to application for license, the period of the license, etc., which are not given here because they do not affect the legal questions presented.
 

 It is the contention of the plaintiff in error that the ordinance is unconstitutional upon the ground that it violates Article I, Sections 1, 10 and 19, of the Constitution of Ohio, and the Fifth and Fourteenth Amendments to the Constitution of the United States. These sections, in their material portions, read as follows :
 

 Article I, Section 1, Constitution of Ohio. “All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoy'ing and defending life and liberty, acquiring, possessing, and protecting property, and seeking and obtaining happiness and safety.”
 

 Article I, Section 10, Constitution of Ohio. “No person shall be compelled, in any criminal case, to be a witness against himself.”
 

 Article I, Section 19, Constitution of Ohio. “Private property shall ever be held inviolate but subservient to the public welfare. "When taken in time of war or other public exigency, imperatively requiring its immediate seizure or for the purpose of making or repairing roads, which shall be open to the public, without charge, a compensation shall be made to the owner, in money: and in all other cases, where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by a deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.”
 

 Fifth Amendment to the Constitution of the United States. “No person shall be # * * deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.”
 

 Fourteenth Amendment to the Constitution of the
 
 *459
 
 United States, Section 1. “ * * * Nor shall any State deprive any person of life, liberty, or property, without due process of law * * *.”
 

 It is in brief the contention of the plaintiff in error that the ordinance is an unreasonable exercise of the police power. He urges that the ordinance selects the business of selling corn sugar and places a restriction upon it merely because corn sugar may possibly be used for the violation of the prohibition law, and that since it singles out a particular commodity and is not applicable to all food products which are capable of being employed in the making of alcohol, it embodies an unconstitutional discrimination.
 

 Considering this contention in the light of the record, we find that the plaintiff in error, defendant below, admitted at the trial that he was manager of one of the stores conducted by the Stone Malt Company, a corporation which purchases and sells malt, hops, bottles, caps, capping machines, corn sugar, tubing, crocks, jugs, charcoal and other merchandise, including fruit juices, fruit presses, fruit jars, glasses and granulated sugar. The plaintiff in error had procured a license for carrying on the business of buying and selling corn sugar under the ordinance, but he admitted that he had violated that provision thereof which required him to keep permanent bound books recording the purchases, showing the dates and amounts purchased, and from whom purchased, and all sales of corn sugar, and that he failed to make reports to the chief of police as required by the ordinance.
 

 The chemist of the Corn Products Company, witness on behalf of Grown, named several legitimate uses of corn sugar, among them the use for rayon purposes, for which he said that he thought “they would use carload shipments,” for making syrup, and for'making vinegar. The record shows no instance of the purchase of corn sugar in carload lots from the store of which this plaintiff in error is the manager, nor of any
 
 *460
 
 purchase of corn sugar in Cleveland in carload lots. The chemist of the Corn Products Company admitted that he knew of no company in Cleveland that uses corn sugar for legitimate purposes. The plaintiff in error, Grown, did not take the stand to testify in his own behalf.
 

 Does the ordinance establish an unconstitutional discrimination and classification?
 

 It is the general rule that a reasonable classification and regulation of a private business within the constitutional limits of the police power does not violate the constitutional provisions above quoted.
 

 Under the definition of corn sugar enacted in the first section of the ordinance, the ordinance applies, not to one kind of sugar only, but also to any monosaccharide or mixture of monosaccharides, derived from grain or vegetable substances, sold in the dry state, and including compounds known as invert or brewer’s sugar.
 

 The plaintiff in error contends that this ordinance to be valid must apply to all kinds of sugar, since any kind of sugar can be used as a basis for the making of alcohol. However, the record shows both in the testimony of the senior chemist of the city of Cleveland and in the testimony of the chemist of the Corn Products Refining Company of Chicago, that the quickest way to manufacture alcohol is to derive it from a monosaccharide and from certain other chemicals which in chemical union “exhilarate fermentation.” Alcohol may be made from cane or beet sugar but these sugars are disaccharides. Before alcohol can be manufactured from a disaccharide it must first be resolved into a monosaccharide, or as it is technically stated, to produce alcohol from a disaceharide, there must be a reduction from a multiple molecule sugar to a single molecule sugar. The monosaccharide is a single molecule sugar. Hence the process of manufacturing from the disaceharide requires much more time
 
 *461
 
 and equipment than the employment of a monosaccharide.
 

 Since under the definition of the ordinance it is all monosaccharides which are regulated, and since the classification of the sugars for the purposes of this enactment into monosaccharides and disaccharides has a reasonable relation to the end desired, we overrule the contention of the plaintiff in error that the ordinance is arbitrary, unreasonable and discriminatory. The ordinance operates upon all sugars in the class of monosaccharides. While the ordinance does not cover the sugars in the class of disaccharides, this fact does not render it unconstitutional. It is well established in this state that the fact that police legislation is confined to certain measures and does not cover the entire field of similar possible abuses does not render such legislation invalid.
 
 Yee Bow
 
 v.
 
 City of Cleveland,
 
 99 Ohio St., 269, 124 N. E., 132, 12 A. L. R., 1424;
 
 Longbrake
 
 v.
 
 State,
 
 112 Ohio St., 13, 146 N. E., 417, 41 A. L. R., 925.
 

 Since the measure constitutes a reasonable exercise of the police power, the requirements of the ordinance, although they regulate.the conduct of a private business, do not constitute the taking of property without due process of law, and do not constitute the taking of property, and therefore the ordinance in no way violates Article I, Sections 1 and 19, of the Constitution of Ohio, or the due process clause of the Fourteenth Amendment to the Constitution of the United States.
 

 The Fifth Amendment to the Constitution of the United States does not apply to actions by state Legislatures or municipal councils, and hence we overrule this objection.
 

 It is further claimed that this enactment forces the seller or dealer in corn sugar to be a witness against himself. We fail to understand this contention. If the plaintiff in error complies with the ordinance, and
 
 *462
 
 keeps the books required, he has not then violated the ordinance, and he is in no way compelled to be a witness against himself.
 

 A more serious contention is that Section 821-8 of the ordinance, which provides that
 
 “No
 
 licensee hereunder shall sell corn sugar to any person, firm or corporation, whom he has reasonable grounds to believe is purchasing the same under a false or fictitious name or address, or whom he has reasonable grounds to believe intends to use the same in a manner prohibited by law,” fails to fix a yardstick by which the seller of corn sugar can determine whether or not the purchaser is giving a false or fictitious name or whether or not the purchaser intends to use the corn sugar in an illegal manner. However, this question also is foreclosed. Sections 6340 to 6344, inclusive, General Code, which constitute a part of the Pawnbrokers ’ Act, in addition to requiring pawnbrokers at great length and in meticulous detail to list each and every pledge or sale which they negotiate, requires each pawnbroker to make a daily report to the police department of the description of all such articles. Acts of this character have been repeatedly held by the courts to be constitutional. Similar drastic regulations were upheld as to pawnbrokers by the Supreme Court of Illinois in
 
 Launder
 
 v.
 
 City of Chicago,
 
 111 Ill., 291, 53 Am. Rep., 625. A similar requirement respecting pawnbrokers was objected to in
 
 City of St. Joseph
 
 v.
 
 Levin,
 
 128 Mo., 588, 31 S. W., 101, 49 Am. St. Rep., 577, and it was held that this did not violate the State and Federal Constitutions.
 
 City of Kansas City
 
 v.
 
 Garnier,
 
 57 Kan., 412, 46 P., 707;
 
 Commonwealth
 
 v.
 
 Leonard,
 
 140 Mass., 473, 4 N. E., 96, 54 Am. Rep., 485.
 

 An illuminating discussion of the general question is to be found in 32 L. R. A., 116, under the ease of
 
 City of Grand Rapids
 
 v.
 
 Braudy.
 

 In the case of
 
 Commonwealth
 
 v.
 
 Leonard, supra,
 
 the defendant, a junk dealer, was ■ indicted for receiving
 
 *463
 
 stolen goods and not complying with the provisions of the Massachusetts statutes and the ordinance of the city of Cambridge, which required him to keep a book for the purpose of entering a record of the articles purchased by him. It was held that if the defendant intentionally neglected to keep such book for the purpose of tracing all articles purchased by him as a junk dealer, such a fact was competent to be considered by the jury.
 

 Drastic regulations of private business have been repeatedly held by the courts to be constitutional in this state. In
 
 Marmet
 
 v.
 
 State,
 
 45 Ohio St., 63, 12 N. E., 463, the specific point was raised that a statute relating to keepers of livery stables, proprietors of theaters, dealers in secondhand articles, keepers of junk shops, and the owners of all vehicles used upon the streets of the city, instituting requirements which were attacked as inquisitorial, was unconstitutional. Spear, J., speaking for the court, pointed out that keepers of junk shops and dealers in secondhand articles may be properly classed with pawnbrokers and keepers of loan offices. “As to them,” he said, “it is well known that, in large cities, the supervising power of the police is necessary, inasmuch as thieves and receivers of stolen property often resort to such places to pledge or otherwise dispose of their ill-gotten gains.”
 

 Similar drastic regulations of private business were upheld in
 
 Sanning
 
 v.
 
 City of Cincinnati,
 
 81 Ohio St., 142, 90 N. E., 125, 25 L. R. A. (N. S.), 686;
 
 State
 
 v.
 
 Norval Hotel Co.,
 
 103 Ohio St., 361, 133 N. E., 75, 19 A. L. R., 637;
 
 Holsman
 
 v.
 
 Thomas, City Clerk,
 
 112 Ohio St., 397, 147 N. E., 750, 39 A. L. R., 760;
 
 Dunn
 
 v.
 
 State,
 
 122 Ohio St., 431, 172 N. E., 148.
 

 The state, in the exercise of its police power, is authorized to subject all occupations to a reasonable regulation where such regulation is required for the protection of public interests or for the public welfare. Tiedeman on Limitations of Police Power, 194.
 

 
 *464
 
 In
 
 Phillips
 
 v.
 
 State,
 
 77 Ohio St., 214, 82 N. E., 1064, the constitutionality of Sections 4413 and 4414, Revised Statutes, which required junk dealers and dealers in secondhand articles to put up a sign and keep a hook containing a description of the articles purchased and to retain such articles for at least thirty days before disposing of the same, was upheld as a necessary and reasonable exercise of the police power, and therefore constitutional.
 

 In
 
 Sanning
 
 v.
 
 City of Cincinnati, supra,
 
 speaking of the decision in
 
 Phillips
 
 v.
 
 State, supra,
 
 the court quotes that part of the
 
 Phillips
 
 opinion in which Davis, J., says: “ ‘It is almost an axiom that anything which is reasonable and necessary to secure the peace, safety, morals and best interests of the commonwealth may be done under the police power; and this implies that private rights exist subject to the public welfare.’ And again: ‘the general power of the legislature to determine what is necessary for the protection of the public interests being clear, judicial inquiry is necessarily limited to determining whether a particular regulation is reasonable, impartial and within the limitations of the constitution. The legislature is the judge of the mischief and the remedy, and of what shall be state policy * * *.’ ”
 

 In
 
 Renner Brewing Co.
 
 v.
 
 Rolland,
 
 96 Ohio St., 432, 118 N. E., 118, the court, in speaking of the opinion in
 
 Phillips
 
 v.
 
 State,
 
 said: “These statutes are by no means an isolated example of legislative recognition of the fact that certain character of property and certain kinds of business demand legislation peculiar to the needs of such business or property. The statutes relating to junk dealers are particularly in line with the statutes under consideration, yet these statutes were held to be a necessary, reasonable and constitutional exercise of the police power.
 
 Phillips
 
 v.
 
 State of Ohio,
 
 77 Ohio St., 214.”
 

 In Section 6344, General Code, pawnbrokers are pro
 
 *465
 
 Mbitecl from receiving pledges or purchasing from minors, intoxicated persons, habitual drunkards, or any person known by such pawnbroker to be a “thief, or associate of a thief, or a receiver of stolen property, or from any person whom he has reason to suspeet or believe to be any of the foregoing.”
 

 Secondhand dealers and junk shops, in Section 6373, are prohibited from transacting business with a “minor or apprentice, knowing or having reason to believe him to be such.”
 

 In view of these restrictions in statutes concededly valid, we cannot conclude that the restriction of the present ordinance is unconstitutional.
 

 The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias, Day, Kinkade and Stephenson, JJ., concur.