The demurrer admits all facts well pleaded and the petition alleges in terms that the position in question is "one in the unclassified service, as defined by Section 486-8 of the Ohio General Code." In view of the duties of the position as set forth in the petition, however, we think the allegation a legal conclusion not warranted by the facts pleaded, and, therefore, not admitted by the demurrer.
We also lay aside the allegation of service in the Canadian Army. Whether or not the legislature of Ohio may constitutionally prefer soldiers, sailors and others who served under the American colors, there is, in our opinion, no question of its right to omit from preferred classification those whose service was under the flag of another country. To construe the language of Sections 486-10 and 486-13, General Code, so as to include in the preferred groups those honorably discharged from the service of other nations, would violate both syntax and logic. *Page 219 
But though the relator be not entitled to preference by reason of his service in the Canadian Army, he is a citizen of Ohio, and, as such, challenges the constitutional right of others to a preference not accorded him.
The claim that Article I, Section 1 of the Constitution of Ohio, is violated, was not insisted upon either in the briefs or in the argument, and we do not think it necessary to advert further to this contention. Sanchez v. United States,216 U.S. 167, 30 S.Ct., 361, 54 L.Ed., 432; Taylor v. Beckham,178 U.S. 548, 20 S.Ct., 890, 44 L.Ed., 1187; State, ex rel., v.Hawkins, 44 Ohio St. 98, 5 N.E. 228; Green v. State CivilService Commission, 90 Ohio St. 252, 107 N.E. 531; Dunn v.State, 122 Ohio St. 431, 172 N.E. 148; Grown v. City ofCleveland, 125 Ohio St. 455, 181 N.E. 897, 84 A. L. R., 708;Goodrich v. Mitchell, 68 Kan. 765, 75 P. 1034, 64 L.R.A., 945.
Nor do we consider the statutes and civil service regulations involved an infringement upon the Fourteenth Amendment to the federal Constitution. Shaw v. City Council of Marshalltown,131 Iowa 128, 104 N.W. 1121, 10 L.R.A. (N.S.), 825; Heim v.McCall, 239 U.S. 175, 60 L.Ed., 206, 36 S.Ct., 78; Hays v.State of Missouri, 120 U.S. 68, 7 S.Ct., 350, 30 L.Ed., 578;Magour v. Illinois Trust Co., 170 U.S. 283, 18 S.Ct., 594,42 L.Ed., 1037.
We come, therefore, to the vital question in the case:
Is the preference accorded under Sections 486-10 and 486-13, General Code, and cognate sections, a violation of Article XV, Section 10 of the Constitution of Ohio?
Section 486-10, General Code, provides:
"All applicants for positions and places in the classified service shall be subject to examination which shall be public, and open to all, within certain limitations, to be determined by the commission, as to citizenship, residence, age, sex, experience, health, habit and *Page 220 
moral character; provided, however, that any soldier, sailor, marine, members of the army nurse corps or red cross nurse who has served in the army, navy or hospital service of the United States in the war of the rebellion, the war with Spain, including the Philippine insurrection and the Chinese relief expedition, or from April 21, 1898 to July 4, 1902, or the war with the central powers of Europe between the dates of April 6th, 1917, and November 11th, 1918, who has been honorably discharged therefrom and is a resident of Ohio, may file with the civil service commission a certificate of service and honorable discharge, whereupon he shall receive additional credit given in the regular examination in which he receives a passing grade of twenty per cent. of his total grade. Such examination shall be practical in character and shall relate directly to those matters which will fairly test relative capacity of the person examined to discharge the particular duties of the position for which appointment is sought, and shall, when appropriate, include tests of physical qualifications, health and manual skill."
Section 486-13, General Code, contains similar provisions.
Article XV, Section 10 of the Ohio Constitution, reads:
"Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision."
Under this provision, before any appointment or promotion in the civil service may be made, the authorities must ascertain: (a) the degree of the candidate's merit, and (b) the degree of his fitness.
The accepted canons of construction require that meaning be given to both of these words, and resort to *Page 221 
the dictionary shows that their meanings are not identical. According to Webster "merit" used as a noun means: "due reward or punishment; the quality of deserving well or ill; desert." The original significance of the Latin root was to get a share. As a verb the word, "merit", means: "to earn by service or performance; to have a right to claim as a reward." The word, "fitness", means: "adapted to an end, object or design; prepared; ready." Synonyms given are "prepared", "qualified", "competent."
These qualities are to be ascertained as far as practicable
by competitive examination. The qualifying phrase takes cognizance of the limitations of competitive examinations in determining qualifications for certain types of positions. Personal secretaryships, for example, demand suitable dispositions and temperaments which competitive examinations fail to reveal. For further example, positions in which fiduciary or discretionary qualities are of prime importance can not practically be filled by this process. We do not see anything in the requirements of the position in question, however, to bring it within the exempted classes.
What, then, is meant by "competitive examination?" In a competitive examination, the candidates match their qualifications, each against the others, and the final determination is made by rating and comparison. It is open to all who are eligible. In contrast, a non-competitive examination is one in which the examining authority selects at pleasure such candidates as he may choose and subjects them to examination as he deems necessary.
The relator's argument appears to be grounded on the inarticulate major premise that the examination required by the constitution must consist only of questions and the candidates' responses. Certainly, written examinations are not required. Is the process of examination limited to the testing of knowledge and *Page 222 
education by means of interrogations and answers, or may it embrace a wider inquiry into the underlying experience of the applicant?
Plainly, if such wider inquiry is permissible, it must, to be "competitive", be made equally of all.
Reference to current civil service practice, in this and other jurisdictions, reveals at once that such wider inquiry is practically universal. Age, sex, health, physical qualifications, preliminary education, practical experience, these and many other things are scrutinized in determining merit and fitness.
Section 486-15, General Code, provides for keeping records of efficiency in service. It then provides that "* * * All examinations for promotion shall be competitive. In promotional examinations efficiency and seniority of service shall form apart of the maximum mark attainable in such examination. * * * "
Bearing in mind that appointments and promotions are dealt with in the same terms in the constitution, it becomes apparent that by practical construction, at least, the term "examination" has been made to mean much more than the testing of knowledge by questions and answers.
It may, of course, be argued that such practical construction, even though universal and long continued, does not necessarily settle the constitutional question. This court, however, has upheld the constitutionality of an act which went even further. In Hile v. City of Cleveland, 118 Ohio St. 99,160 N.E. 621, a section of the city charter which provided that prior experience might be substituted entirely for a written examination was held not to violate Article XV, Section 10 of the Constitution.
In seeking to ascertain what meaning the framers of the constitutional provision sought to express by the words "competitive examination" we may fairly survey civil service practice generally, as it then existed. We must assume that they meant to include in *Page 223 
the term those elements then generally considered in making up the final marks. Such survey reveals an almost universal inclusion of elements other than knowledge as tested by questions and answers.
If then, a showing of experience may be included as a part of the examination, the one question remaining is whether or not military experience, as evidenced by the fact of service in the army, navy, etc. (Sections 486-10 and 486-13, General Code), may be constitutionally so considered.
Great stress is laid in the relator's brief upon the opinion of Judge Cardozo in Barthelmess v. Cukor, 231 N.Y. 435,132 N.E. 140, 16 A. L. R., 1404.
The New York statute read:
"Any person who while in the military or naval service took and passed such examination [i. e., examination for promotion], or any person who took and passed such examination and thereafter entered the military or naval service of the United States, shall be placed upon the eligible list of such grade, his salary shall be fixed at the medium amount prescribed for such grade and he shall be preferred for any appointment or promotion thereafter made in such grade in the department in which he shall be employed."
The New York Constitution then provided:
"Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained so far as practicable, by examinations, which, so far as practicable shall be competitive; provided, however, that honorably discharged soldiers and sailors from the army and navy of the United States in the late Civil War, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made." *Page 224 
The New York court held the statute to be a violation of the constitutional provision.
It will be noted that both the statute and the constitutional provision are quite different from ours. The statute placed all veterans who passed the examination ahead of all non-veterans, regardless of grades, and the constitution in terms gave a preference to civil war veterans only. By the plainest principles of constitutional construction, no other preference could be established. Having properly held the statute unconstitutional, the learned judge was called upon to do no more and the remainder of his remarks are merely obiter. In the course of these remarks, however, he makes this interesting statement:
"* * * it [the legislature] may say that military or naval service (whether in the Civil War or elsewhere) is something to be counted by the examiners, like experience in other fields, whenever service or experience qualifies for office or employment. Service so considered does not override the resultsof competitive examination, but enters into the results as acontributory factor."
The point is made in the relator's argument that the allowance to veterans of twenty per cent. of the mark made on the written examination is arbitrary and unreasonable in that it makes no distinction between positions for which military training might reasonably be regarded as good preparation and those for which it might not. It is also urged that no difference is made in the allowance to one who served only a day and to one who served for many months. There is force in these contentions. But if it be conceded that anexamination to ascertain merit and fitness may consist of other inquiries, in addition to those relating merely to knowledge, can we say that the legislature is without power to prescribe a reasonable weight to be given to military service? In our opinion the weight prescribed in this statute is neither so arbitrary or so *Page 225 
unreasonable as to violate the constitution. We may not strike down the statute merely because, in our judgment, different allowances might be wiser. While the benefit derived from military training varies, doubtless, from case to case, we find ourselves unable to say that its value is so little in any case as to make the action of the legislature arbitrary and void.
Merit, as well as fitness, is prescribed by the constitution as a qualification for appointment. Merit, as the dictionary shows, means deserving well. The legislature, in our opinion, was amply within its powers in providing that their deserts be reasonably reflected in the examination marks accorded veterans for military services.
To hold this legislation unconstitutional would appear to require a course of reasoning leading logically to serious consequences. It might require an adherence to the result of the question and answer examination so strict as to eliminate eligible lists. The absolute high man might have to be the only one certified for appointment. Such rigidity and disregard of all personal equations would greatly change the civil service system as we now have it.
Whether or not the provisions of these statutes are wise or represent the best public policy is not for us to say. Such considerations fall within the province of the legislature, which we may not invade.
Authorities are not wanting to the effect that legislative provisions, such as the one under consideration, are not unconstitutional. So far as we have discovered, however, New York is the only other state having a constitutional provision somewhat similar to ours, and such authorities are, therefore, of little value in the decision of our precise question. The tenor of these authorities, however, supports our reasoning.Jones v. O'Toole, 190 Cal. 252, 212 P. 9; Mayor of Lynn v.Commrs. of Civil Service, 269 Mass. 410, *Page 226 169 N.E. 502; State, ex rel. Mehan, v. Empie, 164 Minn. 14,204 N.W. 572.
In our opinion, the provisions of Sections 486-10 and 486-13, General Code, and of the civil service regulations based thereon, are not in violation of the Constitution of Ohio or the Constitution of the United States. The judgment of the Court of Appeals is affirmed.
Judgment affirmed.
WEYGANDT, C.J., ALLEN, STEPHENSON, MATTHIAS and ZIMMERMAN, JJ., concur.