INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL UNION
No. 136, ET AL., APPELLANTS, v. CITY OF DAYTON CIVIL
SERVICE BOARD, ET AL., APPELLEES.

[Cite as *Internatl. Assn. of Firefighters, Local No. 136 v. Dayton
Civ. Serv. Bd.*, 107 Ohio St.3d 10, 2005-Ohio-5826.]

(No. 2004–1103—Submitted April 12, 2005—Decided November 16, 2005.)

---

MOYER, C.J.

{¶ 1} This appeal involves the process by which the city of Dayton selects persons for employment in the Dayton Fire Department. The question presented is whether the civil service preference-points rule adopted by the civil service board violates the charter of the city of Dayton.

{¶ 2} Dayton is governed by its charter. Pursuant to the charter, the civil service board of the city adopts rules and regulations to govern the civil service of the city. Rule 6 of the Civil Service Board Rules and Regulations provides the standards for administering competitive examinations for positions within the competitive class of the classified service. An amendment to Rule 6 allows "preference points" to be added to the scores of certain persons who take the firefighter-recruit examination. The instant case addresses whether preference points may be awarded for successful completion of the Fire Apprentice Program.

{¶ 3} Rule 6, Section 11 provides:

{¶ 4} "A. Subject to paragraph B of this section, a person obtaining a passing grade on an open competitive examination for the position of Firefighter Recruit is eligible to receive preference points as follows:

{¶ 5} "* * *

{¶ 6} "(3) A person who prior to the date of examination has successfully completed Phase I (EMT–B) Training in the Fire Apprentice Program conducted by Sinclair Community College in cooperation with the City of Dayton is entitled to have five (5) preference points added to that person's passing grade.

{¶ 7} "(4) A person who prior to the date of the examination has successfully completed Phase II (EMT–P) Training in the Fire Apprentice Program conducted by Sinclair Community College in cooperation with the City of Dayton is entitled to have five (5) preference points added to that person's passing grade.

{¶ 8} "B. Ten (10) preference points are the maximum preference points that a person may receive who has completed Phase I (EMT–B) and Phase II (EMT–P) Training conducted by Sinclair Community College in cooperation with the City. Five (5) preference points are the maximum preference points that a person may receive who has not completed both Phase I (EMT–B) and Phase II (EMT–P) Training conducted by Sinclair Community College in cooperation with the City. The maximum preference points set forth herein apply to all persons, regardless of qualifications, eligible to receive preference points pursuant to this section. To remain eligible to receive preference points pursuant to paragraphs A(3) or (4) above, a person who has completed Phase I (EMT–B) and/or Phase II (EMT–P) Training in the Fire Apprentice Program conducted by Sinclair Community College in cooperation with the City must maintain a current EMT–B and/or EMT–P certification with the State of Ohio."

{¶ 9} The Fire Apprentice Program offers classroom and occupational training and began as part of an effort to increase female and minority representation in the Dayton Fire Department. The program is defined in a written report known as the Diversity Plan. The Diversity Plan states that six percent of uniformed firefighters in the Dayton Fire Department are female and that, although African–Americans constitute 42 percent of the population of Dayton, only five percent of uniformed firefighters are African–American. Similar disproportionate representation exists among officers within the department. In view of this disparity, the Diversity Plan recommended creation of the Fire Apprentice Program to facilitate recruitment, education, and training of "a diverse group of individuals."

{¶ 10} A selection committee for the Fire Apprentice Program, comprising persons appointed by the city, the local firefighters union, and Sinclair Community College, selects qualified applicants based on references, the applicant's record of community service participation, and a brief essay. The Diversity Plan states that an applicant for the program must be a resident of the city of Dayton, a United States citizen, and 18 to 31 years of age, and must have graduated from high school or earned a G.E.D., successfully completed a police background check, and passed a medical examination. Additionally, an applicant must hold a valid Ohio driver's license and possess the physical ability to perform the job of a firefighter recruit.

{¶ 11} On September 13, 2002, the civil service board administered a competitive examination for the position of firefighter recruit, and some participants in

the Fire Apprentice Program sat for the examination. The civil service board intended to award preference points to the examinees consistent with Rule 6, Section 11.

{¶ 12} Plaintiffs-appellants, the International Association of Firefighters, Local Union No. 136, the Fraternal Order of Police, Captain John C. Post Lodge No. 44, and 15 citizens and residents of the city of Dayton, filed a complaint seeking a declaration that Rule 6 of the civil service rules is void as being in violation of the city charter. Appellants also sought injunctive relief to prevent the civil service board from awarding preference points pursuant to Rule 6, Section 11. Appellants contend that selection for the Fire Apprentice Program is based on the sex or race of applicants.

{¶ 13} The trial court found that Rule 6, Section 11 violates the charter and permanently enjoined the city from implementing the rule. The Court of Appeals for the Second District reversed, holding that the phrase "competitive examination" as used in Section 95 of the charter permits awarding points to examination scores for completion of the Fire Apprentice Program.

{¶ 14} This cause is now before this court upon the acceptance of appellants' second proposition of law in its discretionary appeal: "Appointments to the civil service may not be made on the basis of race or sex or some other minority status."

{¶ 15} Civil service rules of the city of Dayton must comport with the charter of the city of Dayton. *Reed v. Youngstown* (1962), 173 Ohio St. 265, 19 O.O.2d 119, 181 N.E.2d 700, paragraph two of the syllabus. Sections 95 and 96 of the charter establish standards for firefighter selection.

{¶ 16} Section 95(2)(A) provides: "The competitive class shall include all positions and employment for which it is practicable to determine the merit and fitness of applicants by competitive examination."

{¶ 17} Section 96 authorizes the civil service board, subject to the approval of the city commission, to adopt a "code of rules and regulations, providing for appointment and employment in all positions in the classified service, based on merit, efficiency, character, and industry."

{¶ 18} The position of firefighter recruit is a position within the competitive classified service. Thus, selection of firefighters must be based on a competitive examination that measures the merit, fitness, efficiency, character, and industry of applicants.

{¶ 19} A competitive examination must objectively assess the pertinent qualifications of a candidate and compare those qualifications to those of other candidates. See *State ex rel. King v. Emmons* (1934), 128 Ohio St. 216, 221, 190 N.E.

468. Adding a scoring credit to examination scores does not necessarily vitiate the competitive-examination process. Id. at 224–225, 190 N.E. 468.

{¶ 20} A scoring preference is valid, however, only if it is allied to appropriate qualifications. The charter identifies relevant qualities as merit, fitness, efficiency, character, and industry. Common definitions of those words support a conclusion that awarding preference points for successful completion of the Fire Apprentice Program is not inconsistent with the charter. "Merit" is defined as "worth" or "[d]emonstrated ability or achievement." The American Heritage Dictionary (4th Ed.2000) 1100. "Fitness" is defined as "suitability" or "appropriateness." Id. at 666. To be efficient is to "produc[e] effectively with a minimum of waste, expense, or unnecessary effort." Id. at 570. "Character" is defined as "[m]oral or ethical strength." Id. at 312. "Industry" means "[e]nergetic devotion to a task or an endeavor; diligence." Id. at 895.

{¶ 21} The Fire Apprentice Program educates and trains participants for the position of firefighter recruit and provides unique exposure to the Dayton Fire Department by pairing each apprentice with a firefighter for a mentoring relationship. Persons who successfully complete one or two years in the program are likely to have increased their merit, fitness, efficiency, character, and industry. And the nature of that experience may be immeasurable by written, oral, or performance examination. In that respect, it is not unreasonable for city officials to conclude that a person who has successfully completed the Fire Apprentice Program should receive some credit for that training when competing for a position with the Dayton Fire Department.

{¶ 22} Appellants argue, however, that even if successful completion of the Fire Apprentice Program demonstrates merit, fitness, efficiency, character, and industry, the preference-points system is impermissible because selection for the program favors females and members of minority-race groups. We agree that female or minority status does not of itself indicate merit, fitness, efficiency, character, or industry. The civil service board is not authorized to award preference points based solely on the sex or race of the applicant. The charter does not permit implementing the goal of diversity by those means.

{¶ 23} Nevertheless, Rule 6, Section 11 does not award preference points based on sex or race, and appellants have not proved that selection for the Fire Apprentice Program is based on sex or race. Appellants maintain that the Fire Apprentice Program is an indirect means of artificially inflating the examination scores of female and minority recruits; they submit no evidence to support that contention. The Diversity Plan states that the program "will allow the fire department to reach a broader cross section of the community through employment of a more demographically representative group of citizens wishing to be firefighters." Although the selection committee is aware of the goal of diversity,

14

appellants have presented no evidence of the composition by race or sex of the group selected. In fact, appellants acknowledge that participants in the program include nonminorities. At most, the record shows that Dayton desires a more diverse fire department and that it will educate and train a group of fire apprentices proportionate to the diverse composition of the city.

{¶ 24} The Fire Apprentice Program is a recruitment mechanism through which the Dayton Fire Department may attract a diverse group of potential firefighters. Its purpose is to reach a cross-section of the population of the city so that men, women, and members of all racial groups will be aware of and have an opportunity to pursue employment within the fire department. The record does not indicate that the Fire Apprentice Program operates exclusively for, or even that it prefers, minorities or women. Accordingly, Rule 6, Section 11 does not violate the charter of the city of Dayton on that basis.

{¶ 25} For the foregoing reasons, we affirm the judgment of the court of appeals.

Judgment affirmed.

RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR and LANZINGER, JJ., concur.
O'DONNELL, J., dissents.

———————

**O'DONNELL, J., dissenting.**

{¶ 26} Respectfully, I dissent.

{¶ 27} Civil service examinations are designed to identify applicants who have earned the best examination scores, not those selected by extraneous considerations such as personal favoritism or personal connections. See *Cassella v. Civ. Serv. Comm. of New Britain* (1987), 202 Conn. 28, 34, 519 A.2d 67.

{¶ 28} Today's majority opinion, which condones the preference practice instituted by the city of Dayton in its Fire Apprentice Program, upsets the longstanding design of civil service examinations and offends the principle of civil service. In *Curtis v. State ex rel. Morgan* (1923), 108 Ohio St. 292, 296, 140 N.E. 522, we stated that the fundamental purpose of civil service laws is to establish a merit system by which selections for appointments in public service may be made upon the basis of demonstrated relative fitness. Further, the civil service laws "safeguard appointees against unjust charges of misconduct and inefficiency, and from being unjustly discriminated against for religious or political reasons or affiliations." Id. at paragraph four of the syllabus.

{¶ 29} The Fire Apprentice Program began as part of a commendable goal to increase female and minority representation in the Dayton Fire Department. In fact, a written report known as the Diversity Plan recommended creation of the

program to facilitate recruitment, education, and training of "a diverse group of individuals."

{¶ 30} Contrary to these objectives, Dayton's charter prohibits the use of race, religion, and political affiliation as criteria for selection for the civil service. Furthermore, Rule 6, Section 2 of the Civil Service Board Rules and Regulations, related to open competitive examinations, provides, "All examinations shall be designed to test the relative qualifications of applicants to discharge the duties of the particular position(s) which they seek to fill." It further states, "No question shall relate to the race, ethnic background, sex, political affiliation or opinion, religious belief, or age of any applicant."

{¶ 31} The Civil Service Board based its rules not only on the authority of the charter of Dayton but also on the Ohio Constitution, each of which mandates that civil service appointments to the Fire Department be made on the basis of merit and fitness.

{¶ 32} Specifically, Section 96 of the charter requires the Civil Service Board to adopt rules and regulations for appointment to the classified civil service based on "merit, efficiency, character, and industry."

{¶ 33} And as a fundamental framework and guideline for all civil service appointments in Ohio, Section 10, Article XV of the Ohio Constitution requires that "[a]ppointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examination."

{¶ 34} The issue presented to us in this case concerns the amendment to Rule 6 of the Civil Service Board Rules and Regulations, which awards preference points to applicants who are selected to participate in, and who complete, the Fire Apprentice Program.

{¶ 35} This amendment creates a situation by which a selection committee can favor either one group of minority people over another or one sex over the other by choosing those who will receive preference points upon completing the Fire Apprentice Program. Here, the city of Dayton is attempting to permit indirectly through the selection committee that which it is prohibited from doing by law.

{¶ 36} The majority's reliance upon *State ex rel. King v. Emmons* (1934), 128 Ohio St. 216, 190 N.E. 468, is misplaced because in that case, service in the military was not arbitrarily restricted, and everyone who completed specified military service received additional preference credit. Such a basis for awarding preference points results in equal application for all, would not offend the charter of the city of Dayton or the Ohio Constitution, and has been upheld by the United States Supreme Court in *Personnel Admr. of Massachusetts v. Feeney* (1979), 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870. In sharp contrast to *King,* here,

only the participants chosen by the selection committee to participate in the Fire Apprentice Program receive the preference points.

{¶ 37} In *State ex rel. Brenders v. Hall* (1995), 71 Ohio St.3d 632, 634, 646 N.E.2d 822, we observed that a "competitive civil service examination" consists of an " '[e]xamination which conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed by other examiners of equal ability and experience.' " Id., quoting Black's Law Dictionary (6th Ed. 1990) 284. Instead of using objective criteria for hiring firefighters, the selection committee used references, the participant's record of community service, and a brief essay. These criteria, unlike the credit for military service upheld in *King*, are not capable of being challenged and reviewed, because they are subjective and dependent upon the arbitrary exercise of discretion by the members of the Selection Committee.

{¶ 38} The amendment to Rule 6 does not award preference points on the basis of "merit, efficiency, character, and industry" based on a "competitive examination" as required by the charter of the city of Dayton and the Ohio Constitution. Instead, it permits Dayton to artificially inflate the scores of selected applicants, who may belong to a particular class of persons chosen for special consideration.

{¶ 39} For these reasons, I respectfully dissent. I would reverse the judgment of the court of appeals and hold that the amendment to Rule 6 of the Civil Service Board Rules and Regulations is unconstitutional, violates the Dayton charter, and is therefore unenforceable.

———————

Susan D. Jansen and Diana S. Brown, for appellants.

Patrick J. Bonfield, Dayton Director of Law, John J. Danish, Chief Trial Counsel, and John C. Musto, Assistant City Attorney, for appellees.