[Cite as *Cleveland Firefighters Assn. v. Cleveland*, 2013-Ohio-5439.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   99999

---

# ASSOCIATION OF CLEVELAND FIREFIGHTERS, ETC., ET AL.

### PLAINTIFFS-APPELLEES

vs.

# CITY OF CLEVELAND, ET AL.

### DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-778540

**BEFORE:**   E.A. Gallagher, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**    December 12, 2013

-i-

**ATTORNEYS FOR APPELLANTS**

Barbara A. Langhenry
Director of Law

By:   Gary S. Singletary
Assistant Director of Law
Cleveland City Hall, Room 106
601 Lakeside Avenue
Cleveland, OH   44114-1077


**ATTORNEYS FOR APPELLEES**

**Association of Cleveland Firefighters, etc., et al.**

Thomas M. Hanculak
Mark V. Guidetti
Daniel A. Powell
Joseph W. Diemert, Jr. & Assoc.
1360 S.O.M. Center Road
Cleveland, OH   44124

**Fraternal Order of Police, Lodge 8**

Robert M. Phillips
Patrick J. Egan
Faulkner, Hoffman & Phillips
20455 Emerald Parkway Dr.
Suite 210
Cleveland, OH   44135

EILEEN A. GALLAGHER, J.:

{¶1} Appellants, the city of Cleveland, Martin Flask and the city of Cleveland Civil Service Commission ("the City"), appeal the order of the Cuyahoga County Court of Common Pleas that found that City of Cleveland Charter Section 74-1 violates: (1) Article XV, Section 10 of the Ohio Constitution, (2) R.C. 9.481 and (3) R.C. 124.45. For the reasons set forth below, we conclude that Cleveland Charter Section 74-1 violates Article XV, Section 10 and R.C. 9.481. Therefore, we affirm the judgment of the trial court.

{¶2} Historically, residency requirements tethered to employment in the civil service of the city of Cleveland date back to 1931. *Cleveland v. State*, 8th Dist. Cuyahoga Nos. 89486 and 89565, 2008-Ohio-2655, ¶ 7. In 2006, the General Assembly enacted R.C. 9.481, which prohibited residency requirements as a condition of employment by a political subdivision. In *Cleveland*, this court held that R.C. 9.481 did not supersede the city's home-rule authority to enforce its existing residency requirement. That decision was reversed on appeal to the Ohio Supreme Court based upon its decision in *Lima v. State*, 122 Ohio St.3d 155, 2009-Ohio-2597, 909 N.E.2d 616. In *Lima*, the court concluded that because R.C. 9.481 was enacted pursuant to Section 34, Article II of the Ohio Constitution, it prevailed over conflicting local residency laws. The court stressed that enabling employees of political subdivisions to live where they desire is a matter of statewide concern and that, generally, a political

subdivision could not "require" an employee to reside in a specific area. Cleveland's residency requirement, former city of Cleveland Charter Section 74(a), was struck down by the decision in *Lima*.

{¶3} On March 6, 2012, the city of Cleveland's Charter was amended by a vote of the electorate. The amended Charter Section 74-1, provides:

> A person who is a bona fide resident of the City of Cleveland for at least one year from the date of filing of an application for a promotional civil service examination, who receives a passing grade on the promotional examination, shall have added to his or her raw score five (5) points.

{¶4} On March 20, 2012, the Association of Cleveland Firefighters, Local 93 of the International Association of Firefighters and Frank Szabo (hereinafter referred to as "Local 93") filed a declaratory judgment against the City, the City's Director of Public Safety, Martin Flask and the City's Civil Service Commission seeking a judicial determination that Cleveland Charter Section 74-1 violates Article XV, Section 10 of the Ohio Constitution, R.C. 9.481 and 124.45. Dispositive motions were filed and the trial court denied the City's motion for summary judgment and granted summary judgment in favor of Local 93, holding that city of Cleveland Charter Section 74-1 violates Article XV, Section 10 of the Ohio Constitution and R.C. 9.481. The City appealed that judgment of the trial court, but this court dismissed that appeal, sua sponte, for lack of a final appealable order because the trial court had not ruled on the question of whether Cleveland Charter Section 74-1 violates R.C. 124.45. The trial court then issued an order finding that Section 74-1 did violate R.C. 124.45 and the City appeals.

**{¶5}** The City's first assignment of error states:

City Charter Section 74-1 does not violate Article XV, Section 10 of the Ohio Constitution and the trial court erred as a matter of law in concluding otherwise and granting summary judgment in favor of the Plaintiffs.

**{¶6}** Appellate review of summary judgment is de novo, governed by the standard set forth in Civ.R. 56. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the moving party is entitled to judgment as a matter of law and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party. Appellate review of a trial court's determinations regarding questions of law in a declaratory judgment action are also reviewed de novo. *N.E. Ohio Regional Sewer Dist. v. Bath Twp.*, 8th Dist. Cuyahoga Nos. 98728 and 98729, 2013-Ohio-4186, citing *Arnott v. Arnott*, 132 Ohio St.3d 401, 2012-Ohio-3208, 972 N.E.2d 586.

**{¶7}** Legislation enacted by a municipality is presumed to be valid and the enacting body is presumed to have acted constitutionally. *Rispo Invest. Co. v. Seven Hills*, 90 Ohio App.3d 245, 253, 629 N.E.2d 3 (8th Dist.1993), citing *Xenia v. Schmidt*, 101 Ohio St. 437, 130 N.E. 24 (1920). This presumption applies to municipal charter provisions. *Id.*, citing *State ex rel. Vana v. Maple Hts. City Council*, 54 Ohio St.3d 91, 561 N.E.2d 909 (1990).

**{¶8}** Further, the municipal legislation being challenged will not be invalidated unless the challenger establishes that it is unconstitutional beyond a reasonable doubt.

*Arnold v. Cleveland*, 67 Ohio St.3d 35, 38-39, 616 N.E.2d 163 (1993).

{¶9} Local 93 argues that Charter Section 74-1 violates Article XV, Section 10 of the Ohio Constitution which provides:

> Appointments and promotions in the civil service of the state, the several counties, and cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations. Laws shall be passed providing for the enforcement of this provision.

{¶10} Local 93 argues that Charter Section 74-1 violates Article XV, Section 10 because it awards preference points on an arbitrary basis and effectively destroys the competitiveness of the civil service promotional process by utilizing means other than the examinee's merit and fitness for promotion.

{¶11} Article XV, Section 10 provides a fundamental framework and guideline for all civil service appointments in Ohio. *Internatl. Assn. of Firefighters Local Union No. 136 v. Dayton*, 107 Ohio St.3d 10, 2005-Ohio-5826, 836 N.E.2d 544, ¶ 33 (O'Donnell, J., dissenting). "Under this provision, before any appointment or promotion in the civil service may be made, the authorities must ascertain: (a) the degree of the candidate's merit, and (b) the degree of his fitness." *State ex rel. King v. Emmons*, 128 Ohio St. 216, 220, 190 N.E. 468 (1934).

{¶12} The Ohio Supreme Court in *King* examined the meaning of the term "merit and fitness" within Article XV, Section 10 and stated:

> According to Webster "merit" used as a noun means: "due reward or punishment; the quality of deserving well or ill; desert." The original significance of the Latin root was to get a share. As a verb the word, "merit," means: "to earn by service or performance; to have a right to claim

as a reward." The word, "fitness," means: "adapted to an end, object or design; prepared; ready." Synonyms given are "prepared," "qualified," "competent."

*Id.* at 221.

**{¶13}**  The court found that these qualities are to be ascertained *as far as practicable* by competitive examination.  *Id*. at 221. The qualifying phrase takes cognizance of the limitations of competitive examinations in determining qualifications for certain types of positions.  *Id*. at 221.

**{¶14}**  In the present case, the preference points in Charter Section 74-1 are only awarded if a candidate already has attained a passing grade.  The City argues that the five preference points are a reasonable ingredient in the calculation of a passing candidate's merit and fitness for a supervisory position within the civil service of the City.  The City offered the deposition testimony of the Mayor's Chief of Staff, Ken Silliman, as an explanation of the value of the preference points awarded under Charter Section 74-1 to determine a candidate's merit and fitness.   In addition to asserting that the City benefits from supervisors who live within the boundaries of the city and are able to respond faster to emergencies, Mr. Silliman stated:

> Another factor has to do with the kinds of challenges that supervisors in whatever city occupation, whether it be fire, police, public utilities, airport, community relations, supervisors in all those fields and other city fields are called upon to make difficult decisions to the extent that those supervisors have prior understanding and knowledge of the issues that arise in city neighborhoods.  They are able to give a more complete and a more informed recommendation, or make a more complete or more informed decision.  If you live in a city neighborhood, when you are not working at your city job, you might encounter neighbors when you are mowing your

front lawn and those neighbors might tell you things about what's happening in the neighborhood. You might see people in the grocery store in your neighborhood and people might converse about things that are happening in the neighborhood or give you perspective on what's happening in the city that you would not get if you are living in a location outside the city. I believe that those kinds of experiences and those kinds of bits and pieces of knowledge that you acquire by * * * your status of resident are of value in city decision making and it allows you to have a more complete perspective on the issues that are presented to you for either recommendation or decision.

{¶15} Mr. Silliman stated that, by living in the city, a candidate learns about the people, their needs and their expectations of the City's services.

{¶16} The Ohio Supreme Court in *King*, recognized that some of the qualities essential for a civil service position are impossible to measure with entire objectivity. *King*, 128 Ohio St. 216 at 221-222, 190 N.E. 468. "[B]y practical construction, at least, the term 'examination' has been made to mean much more than the testing of knowledge by questions and answers." *Id.* at 221.

{¶17} In *King*, the court found that a statute that awarded an additional credit of 20 percent to the score of a passing candidate who was an honorably discharged veteran who served during a time of war did not violate Article XV, Section 10. Although the court noted a number of deficiencies in the measurement of the extent that a particular veteran's service would precisely impact his merit and fitness, the court found that,

> [i]n our opinion the weight prescribed in this statute is neither so arbitrary or so unreasonable as to violate the constitution. We may not strike down the statute merely because, in our judgment, different allowances might be wiser. While the benefit derived from military training varies, doubtless, from case to case, we find ourselves unable to say that its value is so little in any case as to make the action of the legislature arbitrary and void.

*King*, 128 Ohio St. at 224-225, 190 N.E. 468.

{¶18} A scoring preference on a competitive civil service exam is valid only if it is allied to appropriate qualifications. *Internatl. Assn. of Firefighters*, 107 Ohio St.3d 10, 2005-Ohio-5826, 836 N.E.2d 544, at ¶ 20. Mr. Silliman suggested a tenuous link between the benefits of residency and the merit and fitness of a civil service promotional candidate. First, any argument by the City that it benefits from faster response times under Charter Section 74-1 lacks merit because the rule does not require continued residence within the City after a candidate files an application for a promotional civil service examination. Furthermore, we find the benefits suggested by Mr. Silliman to be measured through a completely arbitrary basis. As Local 93 points out, an employee who resides within the City for 20 years but moves just prior to the one-year period set forth in Section 74-1 would not receive any credit for his residency experience. Local 93 also notes that the residency experience valued by Mr. Silliman will, in many cases, have no practical impact because employees are often not stationed in the neighborhoods where they reside. Finally, Local 93 argues, and we agree, that to the extent that a promotional candidate might offer some de minimis benefit to his position based upon his knowledge of the community, such knowledge could be fairly ascertained by a competitive exam. We see no reason why a candidate's knowledge of the needs and expectations of the residents of the City cannot be ascertained competitively. Nor do we see a valid relationship between the preference points awarded by Charter Section 74-1

and the merit and fitness of a promotional candidate.

**{¶19}** For the foregoing reasons we find that Charter Section 74-1's preference points are arbitrary and not allied to appropriate qualifications. We conclude that Charter Section 74-1 violates Article XV, Section 10 of the Ohio Constitution.

**{¶20}** Appellant's first assignment of error is overruled.

**{¶21}** The City's second assignment of error states:

> City Charter Section 74-1 does not violate R.C. Section 9.481 and the trial court erred as a matter of law in concluding otherwise and granting summary judgment in favor of the Plaintiffs.

**{¶22}** In *Lima v. State*, 122 Ohio St.3d 155, 2009-Ohio-2597, 909 N.E.2d 616, the Ohio Supreme Court held that R.C. 9.481 prevails over municipal legislation enacted pursuant to home-rule authority granted to municipalities in Article XVIII, Section 3 of the Ohio Constitution. Local 93 argues that Charter Section 74-1 violates R.C. 9.481 which provides in pertinent part:

> (B)(1) * * * no political subdivision shall require any of its employees, as a condition of employment, to reside in any specific area of the state.
>
> * * *
>
> (C) Except as otherwise provided in division (B)(2) of this section, employees of political subdivisions of this state have the right to reside any place they desire.

**{¶23}** It is the position of Local 93 that, at the very least, Charter Section 74-1 grossly offends the spirit and legislative intent of R.C. 9.481 and creates a "de facto" residency requirement. We agree.

**{¶24}** The Ohio Supreme Court has held that "'[m]unicipal charters must be construed to give effect to all separate provisions and to harmonize them with statutory provisions whenever possible.'" *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 122 Ohio St.3d 462, 2009-Ohio-3657, 912 N.E.2d 573, ¶ 31, quoting *State ex rel. Ditmars v. McSweeney*, 94 Ohio St.3d 472, 477, 2002-Ohio-997, 764 N.E.2d 971. Therefore, "[i]n the absence of express language in a charter demonstrating a conflict with a statute, it is the duty of courts to harmonize the provisions of the charter and statutes relating to the same matter." *Id.*, quoting *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections*, 86 Ohio St.3d 107, 112, 712 N.E.2d 696 (1999). The presumption thus is that there is no conflict. *State ex rel. Julnes v. S. Euclid City Council*, 130 Ohio St.3d 6, 2011-Ohio-4485, 955 N.E.2d 363, ¶ 48.

**{¶25}** Undefined language used in a municipal charter must be construed according to its ordinary and common usage. *State ex rel. Commt. for the Proposed Ordinance to Repeal Ordinance No. 146-02, W. End Blight Designation v. Lakewood*, 100 Ohio St.3d 252, 2003-Ohio-5771, 798 N.E.2d 362, ¶ 19.

**{¶26}** In claiming that Charter Section 74-1 does not violate R.C. 9.481 the City asks this court to ignore the practical import of the charter amendment and construe the language of R.C. 9.481 in a narrow fashion that we find to be beyond reason. The reality is that civil service examinations in the city of Cleveland are hyper-competitive. In *Cleveland Firefighters v. Cleveland*, 917 F.Supp.2d 668 (6th Cir.2012), the court noted that 297 of the top 300 candidates who placed onto the eligibility list following a

Cleveland firefighter original hire examination received preference points due to residency. The remaining three received ten preference points for being disabled veterans. An applicant who scored a *perfect score* on the exam could not place high enough on the eligibility list to have a chance of being hired because he did not receive any preference points. *Id*. at 676-677.

{¶27} The City argues that Charter Section 74-1 does not require an employee to reside in the City as a condition of employment and an employee's continued employment is not conditioned upon satisfying Section 74-1. We disagree. The one-year residency requirement of Section 74-1 is significantly longer than the time period between the announcement of a promotional exam and application filing date, such that an employee cannot move into the City to satisfy Section 74-1 after the announcement. It is clear that to have a reasonable opportunity of attaining a position in the upper hierarchy of the City's civil service, a candidate would be required to perpetually satisfy Section 74-1. As a practical matter, Section 74-1 establishes a residency requirement as a condition of employment for positions requiring promotion by competitive exam. Access to such positions is effectively denied to non-residents. We find this to be a condition of employment for such positions and hold that Charter Section 74-1 violates R.C. 9.481.

{¶28} The City's second assignment of error is overruled.

{¶29} The City's third assignment of error states:

City Charter Section 74-1 does not violate R.C. Section 124.45 and the trial

court erred as a matter of law in concluding otherwise and granting summary judgment in favor of the Plaintiffs.

{¶30} Section 7, Article XVIII of the Ohio Constitution provides:

Any municipality may frame and adopt or amend a charter for its government and may, subject to the provisions of section 3 of this article, exercise thereunder all powers of local self-government.

{¶31} Section 3, Article XVIII provides:

Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws.

{¶32} It is well-settled Ohio law that regulation of city civil service is within the power of local self-government. *State ex rel. Lentz, v. Edwards*, 90 Ohio St. 305, 107 N.E. 768 (1914); *Ohio Assn. of Pub. School Emps. v. Twinsburg*, 36 Ohio St.3d 180, 522 N.E.2d 532 (1988). The Ohio Supreme Court in *Lentz* stated:

The manner of regulating the civil service of a city is peculiarly a matter of municipal concern. One of the powers of local self-government is the power of legislating with reference to the local government within the limitations of the * * * [constitution]. As long as the provisions made in the charter of any municipality with reference to its civil service * * * do not conflict with any * * * [provision] of the constitution, they are valid and * * * discontinue the general law on the subject as to that municipality. That provisions adopted by a city might differ from the general laws within the limits defined was not only expected but the very purpose of the amendment was to permit such differences and make them effective.

{¶33} Local 93 argues that Charter Section 74-1 is not a legitimate exercise of the City's home-rule authority because it violates Article XV, Section 10 of the Ohio Constitution and R.C. 9.481. Based on our resolution of the first two assignments of

error, we agree and find Charter Section 74-1 invalid.   Because we find Charter Section 74-1 to be unconstitutional, we need not examine whether it conflicts with R.C. 124.45.

**{¶34}**   The City's third assignment of error is moot.

**{¶35}**   The judgment of the trial court is affirmed.

It is ordered that appellees recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR